**Michigan Supreme Court**
**Lansing, Michigan**

Chief Justice: Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

Reporter of Decisions:
Corbin R. Davis

# Syllabus

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

## PEOPLE v STANLEY DUNCAN
## PEOPLE v VITA DUNCAN

Docket Nos. 146295 and 146296. Argued April 10, 2013 (Calendar No. 6). Decided July 30, 2013.

Stanley Duncan (Docket No. 146295) was charged in the Macomb Circuit Court with five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and four counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). His wife, Vita Duncan (Docket No. 146296), was charged in the Macomb Circuit Court with two counts of CSC-I, two counts of CSC-II, and with operating a daycare facility without a license, MCL 722.125(1)(b). RS was the sole complainant against Vita and one of three complainants against Stanley. The 39th District Court, Joseph F. Boedeker, J., qualified RS, who was three years old at the time, to testify at the separate preliminary examinations held for each defendant. Both defendants were bound over on the charges against them, and a joint trial before a single jury began in the circuit court on September 28, 2012. RS was called to the stand. The circuit court, Matthew S. Switalski, J., began to question RS. RS, who was visibly agitated, was unable to answer the court's questions regarding the difference between telling the truth and telling a lie and what a promise is. The circuit court ruled that RS was not competent to testify under MRE 601. The prosecution asked the court to declare RS unavailable under MRE 804(a) and moved to admit her preliminary examination testimony under MRE 804(b)(1). The court denied the motion, concluding that RS was not unavailable. The court granted a stay of the proceedings, and the prosecution sought emergency leave to appeal in the Court of Appeals. The Court of Appeals held the applications for leave to appeal in abeyance and remanded the cases to the circuit court, asking the circuit court to explain its decision. On remand, the circuit court reiterated its conclusion that RS was not unavailable because the situations identified in MRE 804(a)(1) through (5) were not applicable. The Court of Appeals subsequently denied the prosecution's applications for leave to appeal. The Supreme Court granted the prosecution's motion for immediate consideration, stayed the proceedings, and remanded both cases to the Court of Appeals for consideration as on leave granted. 493 Mich 867 (2012). The Court of Appeals, JANSEN, P.J., and STEPHENS, J. (RIORDAN, J., concurring), affirmed the decision of the circuit court in an unpublished opinion per curiam, issued November 29, 2012 (Docket Nos. 312637 and 312638). The Supreme Court granted leave to appeal, limited to the issue whether RS was unavailable for purposes of MRE 804(a), and vacated as dicta those portions of the Court of Appeals' judgment and the trial court's opinion that discussed whether the admission of RS's preliminary examination testimony would violate defendants' Confrontation Clause rights. 493 Mich 926 (2013).

In an opinion by Chief Justice YOUNG, joined by Justices KELLY, ZAHRA, MCCORMACK, and VIVIANO, the Supreme Court *held*:

Hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay is generally inadmissible and may only be admitted if there is an applicable exception to the general rule prohibiting hearsay evidence. MRE 804(b) lists several types of statements that are not excluded by the general rule when the declarant is deemed unavailable as a witness under MRE 804(a). MRE 804(a) defines unavailability as including situations in which the declarant (1) is exempted from testifying on the ground of privilege, (2) refuses to testify despite court order, (3) has a lack of memory of the subject matter of the statement, (4) is unable to testify because of death or then existing physical or mental illness or infirmity, and (5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means. At issue in this case was whether RS suffered from a then existing mental infirmity under MRE 804(a)(4). "Infirmity" is defined as the quality or state of being infirm, and "infirm" is defined as feeble or weak in body or health, especially because of age. "Mental" is defined as (1) of or pertaining to the mind, or (2) of, pertaining to, or affected by a disorder of the mind. Read together, the phrase "mental infirmity" encompasses weakness or feebleness of the mind, one cause of which may be an individual's age. The phrase "then existing" limits the temporal scope within which a witness's availability under MRE 804(a)(4) may be assessed. The only relevant reference point is the point at which the witness takes the stand; the mental infirmity need not be permanent or longstanding, and the fact that RS was competent and available to testify at two preliminary examinations did not affect the determination whether she was mentally capable or infirm for purposes of MRE 804(a)(4) at the time her testimony was sought at trial. While an older youth or an adult may have been able to suppress the unease of testifying in open court, as a young child, RS was susceptible to particular challenges that must be taken into consideration when determining whether a witness is mentally infirm under MRE 804(a)(4). Under the plain language of the rule, and recognizing the unique mental and emotional limitations of youth, RS had a then existing mental infirmity because she was unable to sufficiently cope with her significant emotional distress and give testimony at trial, a result of her particularly young age. Therefore, she was unavailable within the meaning of MRE 804(a)(4), and the trial court abused its discretion when it concluded that RS was not unavailable. The nature of the inquiry under MRE 804(a)(4) is case specific, and before a court concludes that a child has a then existing mental infirmity, it should use, when appropriate, the tools available in Michigan's court rules and statutes to accommodate young witnesses.

Judgment of the Court of Appeals reversed; cases remanded to the trial court for further proceedings.

Justice MARKMAN, concurring, agreed with the majority's conclusion that RS was unavailable for purposes of MRE 804(a), but disagreed that her youth and apparent fear of testifying in the presence of the person charged with her sexual abuse were sufficient to deem as "mentally infirm" under MRE 804(a)(4) a healthy and developmentally sound four-year-old child. Instead, Justice MARKMAN would have held that RS was unavailable under the general principle of unavailability found in MRE 804(a). In this case, the trial court ruled that RS was

not competent to testify under MRE 601 because she lacked a sense of obligation to testify truthfully and understandably. Thus, she was not suitable or at hand as a witness, and the court's good-faith efforts to qualify her failed. Accordingly, she was unavailable under the general principle of unavailability found in MRE 804(a).

Justice McCORMACK, concurring, agreed with the majority opinion and wrote separately to emphasize that there was a doctrinal foundation supporting the majority's holding. Over the course of the prior decade, the United States Supreme Court had acknowledged that the criminal law must recognize that children are qualitatively different from adults. Although this caselaw involved young offenders and not young witnesses, the underlying rationale was relevant in this case. Four-year-old RS simply was not able to cope with the emotional trauma of testifying the way an adult could, and it therefore made sense that a court might find that she had a then existing mental infirmity under MRE 804(a)(4), even if a similarly situated adult declarant might not be found unavailable under the same subrule.

Justice CAVANAGH, dissenting, agreed with Justice MARKMAN that RS could not be properly categorized as suffering from an infirmity, and would have affirmed the result reached by the Court of Appeals. Accepting, for purposes of this appeal, Justice MARKMAN's conclusion that the use of the word "includes" within MRE 804(a) indicates that the definition of "unavailability as a witness" contains a general principle of unavailability, Justice CAVANAGH concluded that more rigorous attempts than were made in this case should occur before declaring a child witness unavailable. Justice CAVANAGH suggested that the rule concerning unavailability should be reexamined in light of the unique issues involving child witnesses.

©2013 State of Michigan

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED JULY 30, 2013

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                  No. 146295

STANLEY G. DUNCAN,

        Defendant-Appellee.

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                  No. 146296

VITA DUNCAN,

        Defendant-Appellee.

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

While hearsay is generally inadmissible,[1] the Michigan Rules of Evidence permit certain prior out-of-court statements to be admitted into evidence when a witness is unavailable.[2] MRE 804(a) enumerates five situations when a witness is unavailable, including when the witness is unable to testify because of a then existing physical or mental illness or infirmity.[3] We hold that when a child attempts to testify but, because of her youth, is unable to do so because she lacks the mental ability to overcome her distress, the child has a "then existing . . . mental . . . infirmity" within the meaning of MRE 804(a)(4) and is therefore unavailable as a witness. Accordingly, we reverse the judgment of the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion. On remand, the trial court must determine whether the complainant's preliminary examination testimony satisfies the requirements of MRE 804(b)(1)[4] and, if so, whether admission of that testimony would violate defendants' rights under the Confrontation Clause.[5]

## I. FACTS AND PROCEDURAL HISTORY

Defendant Stanley Duncan was charged in the Macomb Circuit Court with five counts of first-degree criminal sexual conduct (CSC-I)[6] and four counts of second-degree

---

[1] MRE 802.

[2] MRE 804(b).

[3] MRE 804(a)(4).

[4] We express no opinion regarding the admissibility of this preliminary examination testimony pursuant to MRE 804(b).

[5] US Const, Am VI.

[6] MCL 750.520b(1)(a).

2

criminal sexual conduct (CSC-II).[7] Stanley's wife, defendant Vita Duncan, was charged with two counts of CSC-I, two counts of CSC-II, and with the misdemeanor offense of operating a daycare facility without a license.[8] The alleged victim in this case, RS, is the sole complainant against Vita and one of three complainants against Stanley.

Separate preliminary examinations were held for each defendant. At Stanley Duncan's preliminary examination on October 17, 2011, then three year old RS correctly answered the trial court's questions about her age, her birthday, and her dog's name, among others. The judge then asked RS if she knew the difference between telling the truth and not telling the truth, to which she responded, "Yes." She also affirmed that she would honestly answer the questions of the attorneys. The court therefore qualified RS as competent to testify, determining that she had sufficient mental intelligence to communicate and had a sense of obligation to testify honestly.[9]

RS testified that on at least three occasions, Stanley Duncan touched her "private," indicating her vaginal area, and "blew raspberries" on her vaginal area while her pants and underwear were off. The raspberries hurt "a little bit," and his touching "really hurt." She testified that the acts occurred in the bathroom of defendants' home, where RS attended daycare.

---

[7] MCL 750.520c(1)(a).

[8] MCL 722.125(1)(b).

[9] See MRE 601 ("Unless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules.").

3

On December 2, 2011, at the preliminary examination concerning the charges against Vita Duncan, RS was qualified as competent after she correctly answered questions about her birthday, her dog's name, and the name of her schoolteacher. RS affirmed her understanding of what telling the truth means, and promised to do so. RS repeated substantially the same answers that she previously gave regarding Stanley Duncan, and also stated that she told Vita more than once that Stanley had touched her. RS also testified that, on at least one occasion while Stanley was touching her, Vita was just outside the bathroom, and that RS could see Vita.

Both defendants were bound over on the charges against them, and a joint trial before a single jury began on September 28, 2012. RS was called to the stand and was first questioned by the court. When asked whether she knew the difference between the truth and a lie, RS responded, "No," and was unable to explain what a promise means. After RS struggled to answer questions similar to those answered at the preliminary examinations, the trial court excused the jury, and met with counsel, RS, and RS's parents in chambers. Afterward, RS was again put on the stand, and again answered, "No" to the questions regarding whether she knew what the truth is, what a lie is, and what a promise is. RS was clearly agitated. Throughout the court's questioning, RS had tears in her eyes and was wringing her hands. RS began crying in earnest just before the court excused her. The court ruled that she was not competent to testify pursuant to MRE 601.

The prosecution immediately asked the court to declare RS unavailable, arguing that RS lacked memory of the events giving rise to the charges,[10] and moved to admit her preliminary examination testimony pursuant to MRE 804(b)(1), a hearsay exception for unavailable witnesses.[11] The trial court considered each of the five situations of unavailability enumerated in MRE 804(a),[12] but held that none of them applied to RS.[13]

After the trial court granted a stay of the trial proceedings, the prosecution sought emergency leave to appeal in the Court of Appeals and moved for immediate consideration of the trial court's ruling that RS was not unavailable. The Court of Appeals granted the prosecution's motion for immediate consideration, held the

---

[10] The prosecution initially argued that RS was unavailable pursuant to MRE 804(a)(3) (stating that unavailability as a witness includes situations in which the declarant "has a lack of memory of the subject matter of the declarant's statement"). In this Court and the Court of Appeals, the prosecution has relied on MRE 804(a)(4), arguing RS suffered from a mental illness or infirmity.

[11] If a declarant is unavailable pursuant to MRE 804(a), the following is not excluded as hearsay: "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(b)(1).

[12] MRE 804(a) lists five situations in which a declarant is considered unavailable: when the declarant is exempted from testifying by operation of a privilege; when the declarant refuses to testify; when the declarant has a lack of memory of the subject of a prior statement; when the declarant cannot testify because of death or a then existing physical or mental illness or infirmity; and when the declarant is absent notwithstanding due diligence to procure the declarant's attendance by the proponent of the statement.

[13] The trial court also declined to rule on the claim, raised by Stanley Duncan's defense counsel, that admission of RS's preliminary examination testimony would violate his right "to be confronted with the witnesses against him . . . ." US Const, Am VI. Because this issue is not before us, we decline to address any potential issues concerning the Confrontation Clause.

5

applications for leave to appeal in abeyance, and remanded the cases to the trial court with instructions to issue an opinion explaining its decision.

In its opinion on remand, the trial court reiterated its holding that RS was not unavailable because her failure to take the equivalent of the oath did not trigger any of the scenarios enumerated in MRE 804(a). Without much discussion, the court ruled that MRE 804(a)(4), which renders a declarant unavailable if she is dead or has a physical or mental infirmity or illness, did not apply because RS's situation did not include any of these circumstances. The court stressed that RS was even younger at the preliminary examination than at trial and suggested that this fact lent support to its ruling that she was not unavailable at the later trial date.[14]

The Court of Appeals denied the prosecution's applications for leave to appeal. This Court granted the prosecution's motion for immediate consideration, stayed the proceedings, and remanded both cases to the Court of Appeals for consideration as on leave granted.[15]

In its opinion, the Court of Appeals affirmed the trial court's finding that RS was not unavailable within the meaning of MRE 804(a) generally and that RS did not meet the specific circumstance of having a "then existing physical or mental illness or

---

[14] Because the trial court ruled that RS did not qualify as an unavailable witness, it did not determine whether RS's preliminary examination testimony satisfied the requirement that "the party against whom the testimony is now offered" have had "an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" to be admissible under the hearsay exception for former testimony. MRE 804(b)(1).

[15] *People v Duncan*, 493 Mich 867 (2012).

infirmity" within the meaning of MRE 804(a)(4).[16] Distinguishing this case from past cases in which witnesses were held both incompetent and unavailable,[17] the Court of Appeals reasoned that the fact that some witnesses are both incompetent and unavailable does not mean that all incompetent witnesses are unavailable. Under MRE 601, a witness is not competent to testify if she "does not have sufficient physical or mental capacity . . . to testify truthfully . . . ." By comparison, MRE 804(a)(4) renders a declarant unavailable as a witness if she "is unable . . . to testify . . . because of . . . then existing physical or mental illness or infirmity[.]" Because the use of distinct language in the two provisions suggests distinct requirements to meet each rule, the Court concluded that RS was not mentally ill or infirm even though she may have lacked the mental capacity to qualify as competent.[18]

---

[16] *People v Duncan*, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2012 (Docket Nos. 312637 and 312638).

[17] See *People v Karelse*, 143 Mich App 712; 373 NW2d 200 (1985), rev'd 428 Mich 872 (1987) (adult complainant held unavailable under MRE 804(a)(4) because she was mentally disabled); *People v Edgar*, 113 Mich App 528; 317 NW2d 675 (1982) (four-year-old complainant's unavailability at trial was attributed to her failure of memory under MRE 804(a)(3)).

[18] The Court also held that the prosecution had failed to demonstrate that MRE 804(a) supplies an illustrative, rather than exhaustive, list of situations in which a witness may be unavailable, foreclosing the possibility that RS was unavailable because of a reason that is not specifically listed in MRE 804(a)(1) through (5).

Moreover, even though the Court of Appeals recognized that it need not determine whether the requirements under MRE 804(b)(1) were met given that Court's conclusion that RS was not unavailable, it analyzed the issue nonetheless. The Court noted that defense counsel did not have the benefit of discovery when cross-examining RS at the preliminary examination, and that, because there were two separate preliminary examinations, one for each of the defendants, counsels' motives differed.

7

We granted the prosecution's motion for immediate consideration and application for leave to appeal, limited "to the issue whether the witness was 'unavailable' for the purposes of MRE 804(a)."[19]

## II. STANDARD OF REVIEW

The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion.[20] A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes.[21] Decisions concerning the admission of evidence often involve preliminary questions of law that are reviewed de novo.[22] These preliminary questions of law include questions involving the interpretation of rules of evidence.[23] A trial court necessarily abuses its discretion when it makes an error of law.[24]

---

[19] *People v Duncan*, 493 Mich 926 (2013). This Court also vacated as dicta portions of the Court of Appeals' judgment and the trial court's opinion discussing application of the Confrontation Clause.

[20] *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

[21] *People v Blackston*, 481 Mich 451, 460, 467; 751 NW2d 408 (2008).

[22] *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

[23] *People v Barrett*, 480 Mich 125, 130; 747 NW2d 797 (2008).

[24] *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012); accord *Koon v United States*, 518 US 81, 100; 116 S Ct 2035; 135 L Ed 2d 392 (1996) ("The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions."). See also *Lukity*, 460 Mich at 488 (stating that when "preliminary questions of law are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law").

## III. ANALYSIS

When construing court rules, including evidentiary rules, this Court applies the same principles applicable to the construction of statutes.[25]  Accordingly, we begin with the rule's plain language.[26]  When the language of the rule is unambiguous, we enforce the plain meaning without further judicial construction.[27]  The Court may refer to dictionaries to aid in discerning the plain meaning of a rule.[28]

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[29]  "Hearsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule."[30]  MRE 804(b) enumerates several exceptions to the rule prohibiting hearsay evidence that apply when a declarant is deemed "unavailable as a witness" pursuant to MRE 804(a).  Consequently, if a witness is determined to be unavailable, certain evidence that would otherwise be inadmissible may be admitted at

---

[25] *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998).

[26] *Danse Corp v City of Madison Heights*, 466 Mich 175, 181-182; 644 NW2d 721 (2002).

[27] *Id.* at 182.

[28] *Fremont Ins Co v Izenbaard*, 493 Mich 859, 859; 820 NW2d 902 (2012); *Gursky*, 486 Mich at 608.

[29] MRE 801(c).

[30] *Gursky*, 486 Mich at 606; see also MRE 802 ("Hearsay is not admissible except as provided by these rules.").

trial so long as it meets the requirements of MRE 804(b) and is not otherwise excluded by another rule of evidence.[31]

With regard to hearsay, a witness's unavailability to testify is governed by MRE 804(a), which provides:

> *Definition of unavailability.* "Unavailability as a witness" includes situations in which the declarant–
>
> (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or
>
> (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
>
> (3) has a lack of memory of the subject matter of the declarant's statement; or
>
> (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
>
> (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means, and in a criminal case, due diligence is shown.
>
> A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

---

[31] See, e.g., MRE 402 ("Evidence which is not relevant is not admissible."); MRE 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); MRE 404(a) (stating that generally "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion").

10

We focus on MRE 804(a)(4), which defines "unavailability" to include a declarant who lacks the physical or mental capability to testify. MRE 804(a)(4) provides that unavailability as a witness includes situations in which the declarant "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity[.]" We focus solely on the phrase "then existing . . . mental . . . infirmity," which provides the basis for our decision. First, we address the term "infirmity." "Infirmity" is defined as "the quality or state of being infirm; lack of strength."[32] In turn, "infirm" is defined as "feeble or weak in body or health, [especially] because of age."[33] Of note, age is specifically designated as a factor that may give rise to an infirmity.

MRE 804(a)(4) contemplates both physical and mental infirmities, though we focus only on whether a mental infirmity existed in this case.[34] The term "mental" modifies "infirmity" and is defined as "**1.** of or pertaining to the mind. **2.** of, pertaining to, or affected by a disorder of the mind[.]"[35] Thus, read together, the phrase "mental infirmity" as used in MRE 804(a)(4) encompasses weakness or feebleness of the mind— one cause of which may be an individual's age.[36]

---

[32] *Random House Webster's College Dictionary* (1995).

[33] *Id.*

[34] The prosecution has not advanced the argument that RS suffered a physical infirmity, nor is there any record evidence suggesting that she did. MRE 804(a)(4) also contemplates physical and mental illness, though neither of these conditions are considered here.

[35] *Random House Webster's College Dictionary* (1995).

[36] Though this Court has never addressed the ambit of MRE 804(a)(4) with regard to age,

11

Furthermore, the language of the rule establishes that the mental infirmity need not be permanent, or even longstanding. The phrase "then existing" specifically limits the temporal scope within which a witness's availability under MRE 804(a)(4) may be assessed; the only relevant reference point is the point at which the witness takes the stand. As a result, the declarant need not suffer from a permanent illness or infirmity. Thus, the fact that RS was competent and available to testify at two preliminary examinations does not affect the determination whether she was mentally capable or infirm for purposes of MRE 804(a)(4) at the time her testimony was sought at trial. Rather, the only relevant inquiry is her condition at the time she was called to testify.

In holding that a child may be mentally infirm in the type of extraordinarily stressful trial situation like the one that existed here, we recognize the obvious truth that children lack the same level of mental maturity as that exhibited by and expected of most adults. Legal and psychological research confirms this uncontroversial proposition.[37] As a result of these limitations, young children are less mentally equipped to cope with severe emotional distress.[38] Testifying in open court can be a harrowing experience for

the Court of Appeals has recognized that an 84-year-old woman was unavailable because she was "physically or mentally infirm . . . ." *People v Murry*, 106 Mich App 257, 260; 307 NW2d 464 (1981). However, that decision appears to have been based more on the declarant's physical illnesses, which made her attendance at court "detrimental to her health." *Id.*

[37] Schuman, Bala & Lee, *Developmentally appropriate questions for child witnesses*, 25 Queen's L J 251, 255 (1999) (recognizing that "[c]hildren are not just short adults"). See also *infra* notes 38-40.

[38] Patton, *Viewing child witnesses through a child and adolescent psychiatric lens: How attorneys' ethical duties exacerbate children's psychopathology*, 16 Widener L R 369 (2010) ("Many child abuse victims are the most psychologically fragile witnesses in the

anyone, and young children are much more susceptible to emotional breakdowns than adults.[39] Indeed, testifying in open court "can make some children tearful, ill, or inarticulate in the courtroom. . . . Under the stress of testifying, some children may regress to a more immature level of behavior."[40] When these emotional terrors are severe and a child has not developed the mental capacity to overcome this distress, an emotional breakdown may eliminate any possibility of securing testimony from the young child.

RS was four years old at the time she was called to testify at trial. She demonstrated an inability to overcome her distress when she was unable to answer the trial court's questions. When asked whether she knew the difference between the truth and a lie, RS responded, "No," and was unable to explain what a promise means. Furthermore, she answered, "No" to whether she knew what the truth is, what a lie is, and what a promise is. Importantly, throughout her examination RS had tears in her eyes, was wringing her hands, and ultimately began to cry, rendering her unable to answer counsels' questions. While an older youth or an adult may have been able to suppress the unease of testifying in open court, RS, as a young child, was susceptible to particular challenges that must be taken into consideration when determining whether a witness is mentally infirm under MRE 804(a)(4). As could be expected from a young child,

_____

legal system.").

[39] Schuman, Bala & Lee, at 255, 297 (stating that testifying in court can be "deeply upsetting" for young children and "can cause them considerable anxiety, even terror").

[40] Myers, Saywitz & Goodman, *Psychological research on children as witnesses: Practical implications for forensic interviews and courtroom testimony*, 28 Pac L J 3, 70 (1996-1997) (citation and quotation marks omitted).

13

especially in the context of alleged criminal sexual conduct, RS simply did not have the mental maturity to overcome her debilitating emotions while on the stand.[41]

Under the plain language of the rule, and with our recognition of the unique mental and emotional limitations of youth, we hold that RS had a then existing mental infirmity in this case because the facts show that she was unable to sufficiently cope with her significant emotional distress and give testimony at trial, a result of her particularly young age. Therefore, she was unavailable within the plain meaning of MRE 804(a)(4).

We recognize the case-specific nature of the inquiry into whether a witness suffers from a "then existing mental infirmity." In this case, the severity of RS's emotional distress made it impossible for her to testify. This is highlighted by the fact that she had previously been able to give testimony about the alleged sexual contacts at issue in this case. Before trial courts hold that a child has a then existing mental infirmity, we urge them to use, when appropriate, the tools in our court rules and statutes to accommodate young witnesses. For example, MCL 600.2163a enables the use of dolls or mannequins to aid children in their testimony. Moreover, in certain circumstances, the statute allows for witness accompaniment by a "support person," use of videorecorded statements, and testimony via closed-circuit television.[42]

---

[41] Though the inquiries may be similar, our holding today does not mean that a finding of incompetence pursuant to MRE 601 necessarily renders a witness unavailable to testify under MRE 804(a)(4). While the definitions of the concepts undoubtedly have some overlap, as they do in the instant case, the two rules employ different language, and therefore require different inquiries. It is unnecessary for us to explicate the exact parameters of the overlap in this case.

[42] See also MRE 803A (hearsay exception for a child's statement about sexual acts).

14

The Court of Appeals concluded that RS did not demonstrate a mental infirmity, characterizing her conduct merely as an inability to provide the trial court with assurances that she was able and willing to testify truthfully. While the Court of Appeals may be correct that she was unable to testify truthfully at the time of trial, this fact does not foreclose the possibility that RS's mental infirmity caused this inability, which ultimately rendered her unavailable. In fact, as discussed, RS clearly demonstrated that, at the time of her trial testimony, she was emotionally overwhelmed and was mentally incapable of overcoming this distress and was therefore unable to affirm that she could testify truthfully. Therefore, the Court of Appeals erred when it failed to examine the reason for RS's inability to testify.

We conclude that the trial court abused its discretion in ruling that RS was not unavailable. As discussed, by using the word "infirmity," MRE 804(a)(4) plainly contemplates that a declarant is unavailable for hearsay purposes when she is unable to overcome severe emotional trouble resulting from the limitations of her young age. Though this is an issue of first impression, the trial court committed a legal error in its interpretation of the rule when it held that RS was not infirm when she was unable to give testimony. The trial court's decision not to admit RS's preliminary examination testimony on the basis of its erroneous legal interpretation necessarily constitutes an abuse of discretion.

## IV. CONCLUSION

The language of MRE 804(a)(4) includes within its list of individuals who are unavailable those witnesses who are mentally infirm at the time they are called to give

15

testimony. In this case, RS was unable to testify because she could not to overcome her significant emotional distress, a result of the unique limitations of her youth and, therefore, she was mentally infirm at the time of her trial testimony. Thus, the lower courts erred by concluding that RS was not unavailable under MRE 804(a)(4).[43] We reverse the judgment of the Court of Appeals and remand this matter for further proceedings consistent with this opinion. On remand, the trial court must determine whether RS's preliminary examination testimony satisfied the requirements of MRE 804(b)(1) and, if so, whether admission of that testimony would violate defendants' rights under the Confrontation Clause.

> Robert P. Young, Jr.
> Mary Beth Kelly
> Brian K. Zahra
> Bridget M. McCormack
> David F. Viviano

`

---

[43] Because RS falls within the ambit of a term listed in MRE 804(a)(4), this Court need not address whether MRE 804(a) provides an exhaustive or an illustrative list of situations in which a witness's testimony is unavailable.

## STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                   No. 146295

STANLEY G. DUNCAN,

       Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                   No. 146296

VITA DUNCAN,

       Defendant-Appellee.

_____

MARKMAN, J. (*concurring*).

I concur in the majority's conclusion that RS was unavailable for purposes of MRE 804(a). I respectfully disagree with the majority, however, that the facts of her youth and apparent fear of testifying in the presence of the person charged with her sexual abuse are sufficient to deem her "mentally infirm" under MRE 804(a)(4). Instead, I would hold that RS was unavailable under the general principle of unavailability found in MRE 804(a). That rule, in full, provides:

> *"Unavailability as a witness" includes* situations in which the declarant—

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) has a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of death or *then existing physical or mental illness or infirmity*; or

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means, and in a criminal case, due diligence is shown.

A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying. [MRE 804(a) (emphasis added).]

I agree with the majority that the language relevant to analysis under MRE 804(a)(4) is the phrase "then existing . . . mental . . . infirmity[.]" But in my view, a four-year-old child who, so far as we know, does not suffer from any sort of developmental disability, and who appears in all respects to be an entirely normal child of this age, simply cannot be properly categorized as suffering from a mental infirmity.

The majority is correct, of course, that at least one prominent dictionary, *Random House Webster's College Dictionary* (1995), defines "infirmity" as "the quality or state of being infirm; lack of strength." This is the second definition of "infirmity" listed by *Random House Webster's*. Notably, however, the first definition specifies "a physical

2

weakness or ailment: *the infirmities of age*." *Id.* Of course, in the present case, "mental" modifies infirmity, so that a definition of the term as "mental weakness or ailment," including the contextual example, "the infirmities of age," is appropriate. This first definition of "infirmity" matches up, unsurprisingly, with *Random House Webster's* first definition of "infirm": "feeble or weak in body or health, esp[ecially] because of age." *Id.* The majority seizes on this last phrase, "especially because of age," pointing out that one "cause" of "weakness or feebleness of the mind" "may be an individual's age." *Ante* at 11. The majority then ultimately holds that "MRE 804(a)(4) plainly contemplates that a declarant is unavailable for hearsay purposes when she is unable to overcome severe emotional trouble resulting from the limitations of her *young age*." *Ante* at 15 (emphasis added).

This analysis is far too strained, in my judgment. The dictionary references to "especially because of age" and "the infirmities of age" plainly refer not to *youth* but to *old age*. When one speaks of a person who suffers from weakness or a state of feebleness because of that person's age, or when we lament the "infirmities of age," I believe that the reasonable reader or listener understands such references to be to *advanced* age. I do not believe that a reasonable person would characterize a perfectly healthy and developmentally sound four-year-old child as mentally infirm, or as suffering from the infirmities of age. This interpretation is also borne out by other dictionary definitions of "infirm." The *American Heritage Dictionary* (2d College ed), for instance, defines

3

"infirm" as "[w]eak in body,[1] esp[ecially] from *old* age; feeble." (Emphasis added.) Similarly, *Webster's Third New International Dictionary* (1966) defines the term as "not strong or sound physically[2] : of poor or *deteriorated vitality*, esp[ecially] *as a result of age* : FEEBLE[.]" (Emphasis added.) An especially young individual cannot be said to have experienced "deteriorated vitality" as a result of age, as deterioration assumes a previous, more robust state. Thus, "deteriorat[ion] . . . as a result of age" must reasonably refer to old age. Accord *People v Murry*, 106 Mich App 257, 260; 307 NW2d 464 (1981) (*84-year-old* witness found to be "physically or mentally infirm").

Though, for these reasons, I cannot join in the majority's conclusion that RS was unavailable under MRE 804(a)(4) because of a "mental infirmity," I do conclude that she was in fact unavailable under the general principle of unavailability set forth in MRE 804(a). The rule begins, "'Unavailability as a witness' *includes* [the five situations listed in MRE 804(a)(1) through (5)]." MRE 804(a) (emphasis added). Use of the word "includes," of course, indicates that the list of five situations is not exhaustive or all-encompassing. See *Random House Webster's* ("include" means "to contain or encompass as *part of* a whole") (emphasis added). This rather obvious proposition is bolstered by our caselaw. In *People v Meredith*, 459 Mich 62, 65; 586 NW2d 538 (1998), we held that a would-be witness who intended to assert her Fifth Amendment

---

[1] Or, given the modifier "mental" in MRE 804(a)(4), read "mind" rather than "body."

[2] Again, because we are dealing with "mental infirmity," "mentally" should be substituted for "physically" here.

4

right and not testify at trial was "unavailable" as a witness for purposes of MRE 804(a), even though the situation was "not expressly treated in MRE 804(a) . . . ." We stated that invocation of the Fifth Amendment right "is of the same character as the other situations outlined in the subrule." *Id.* at 65-66. The Court of Appeals has reached a similar conclusion in a case in which the would-be witness appeared at court the day of trial but abruptly left the courthouse before testifying. "[W]hile [the would-be witness's] eleventh-hour decision to leave the courthouse rather than testify at trial is not expressly addressed under MRE 804(a)," the Court said, "it is also of the same character as other situations outlined in that rule of evidence." *People v Adams*, 233 Mich App 652, 658; 592 NW2d 794 (1999), citing *Meredith*, 459 Mich at 65-66.

"[W]hile 'unavailability' is a term of art under MRE 804(a), it also bears a close nexus to the ordinary meaning of the word." *Meredith*, 459 Mich at 66. *Random House Webster's* defines "available" first as "suitable or ready for use; at hand" and second as "readily obtainable; accessible[.]" *American Heritage* likewise defines the term first to mean "[a]ccessible for use; at hand." Examination of MRE 804(a)(1) through (5) suggests that, in addition to not being "suitable or ready for use; at hand," in order for a would-be witness to be deemed "unavailable" under MRE 804(a), it must also be the case that efforts to render the would-be witness "suitable or ready for use; at hand" or "accessible for use": (1) are impermissible (as in the case of MRE 804(a)(1)); (2) have failed to yield availability (as in the cases of MRE 804(a)(2) and (5)); or (3) would be futile (as in the cases of MRE 804(a)(3) and (4)).

5

In this case the trial court separately ruled that, under MRE 601, RS was not competent to testify. That rule provides that a person is competent to testify unless she "does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably . . . ." Thus, in order to be found incompetent to testify, an individual must either: (1) lack sufficient mental or physical capacity or (2) lack a sense of obligation to testify truthfully and understandably. In this case, there was no indication of physical incapacity on RS's part, and the trial court found that RS was not lacking in mental capacity. Further, the trial court found that RS was "able to testify if she [could have taken] the equivalent of the oath." These facts, taken together, clearly demonstrate that the trial court found RS incompetent not because of a lack of "sufficient physical or mental capacity," but because RS lacked a "sense of obligation to testify truthfully and understandably." Indeed, when the trial court attempted to qualify her as a witness, RS indicated that she did not know the difference between the truth and a lie.

Further, as the facts set forth by the majority indicate, two good-faith efforts to qualify RS as a witness were made and failed. When RS was called as a witness at trial, the judge asked RS a lengthy and specially tailored set of questions designed to determine whether RS was able to distinguish between the truth and a lie, and she did not respond satisfactorily. After this effort failed, the judge had RS return to her parents for several minutes, presumably to calm her down. Counsel, RS's parents, and a police officer then met together in the judge's chambers during a 40-minute recess. Following this recess, a second effort to qualify RS was made, with the judge again carefully questioning RS in a manner sensitive to her youth. This effort also failed. When the prospect of having the parties' attorneys ask RS questions regarding her ability to testify was raised, Stanley

Duncan's counsel responded, "I have [no questions]," and Vita Duncan's counsel said nothing.

In summary, the trial court found that RS lacked a sense of obligation to tell the truth. She therefore was not "suitable or ready for use; at hand" as a witness. Repeated good-faith attempts to qualify RS (and thus render her *available*) were unsuccessful. Because the trial court found that RS lacked a sense of obligation to tell the truth, and because good-faith efforts to qualify her as a witness were made yet failed, RS was genuinely "unavailable" under the general principle of unavailability found in MRE 804(a), and I would hold accordingly.

Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v                                No. 146295

STANLEY G. DUNCAN,

     Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v                                No. 146296

VITA DUNCAN,

     Defendant-Appellee.

_____

McCORMACK, J. (*concurring*).

I concur in the majority opinion and write separately because I believe that there is a doctrinal foundation supporting the proposition that the criminal law should recognize that children are qualitatively different from adults, which is relevant to our decision in this case. Over the course of the past decade, the United States Supreme Court has acknowledged that, as in many other areas of the law, the criminal law must recognize that the unique characteristics of children render them inherently different from adults.[1]

_____

[1] See, e.g., *JDB v North Carolina*, 564 US ___, ___; 131 S Ct 2394, 2404 n 6; 180 L Ed 2d 310 (2011).

Indeed, the Supreme Court has noted that in certain circumstances, children are *constitutionally* different from adults.[2]  Although this caselaw has involved young offenders and not young witnesses, I believe that the underlying rationale is relevant here.

In *Roper v Simmons*,[3] the Supreme Court held that the Eighth Amendment prohibits capital punishment for crimes committed while a defendant was under the age of 18.  In *Graham v Florida*,[4] the Court held that juvenile offenders cannot be sentenced to life imprisonment without parole for nonhomicide offenses.  In so finding, the Court stated that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds."[5]  Most recently, in *Miller v Alabama*,[6] the Court held that mandatory sentences of life without the possibility of parole are unconstitutional when applied to minors.  *Miller* noted that children are constitutionally different from adults when it comes to sentencing and stated that the social science and cognitive science studies supporting the Court's decisions recognizing children as different from adults in *Roper* and *Graham* have only become more robust in the intervening years.[7]

---

[2] *Miller v Alabama*, 567 US ___, ___; 132 S Ct 2455, 2464; 183 L Ed 2d 407 (2012).

[3] *Roper v Simmons*, 543 US 551; 125 S Ct 1183; 161 L Ed 2d 1 (2005).

[4] *Graham v Florida*, 560 US 48; 130 S Ct 2011; 176 L Ed 2d 825 (2010).

[5] *Id.* at ___; 130 S Ct at 2026.

[6] *Miller*, 567 US ___; 132 S Ct 2455.

[7] *Id.* at ___; 132 S Ct 2464 n 5.

2

Admittedly, this caselaw is limited to sentencing theory and juvenile culpability, concerns that are not implicated here. In *JDB v North Carolina*,[8] however, the Supreme Court extended its consideration of minors in the criminal justice system outside the context of sentencing.[9] The Court addressed the differences between children and adults more generally, noting that "[a] child's age is far more than a chronological fact. It is a fact that generates commonsense conclusions about behavior and perception. Such conclusions apply broadly to children as a class. And, they are self-evident to anyone who was a child once himself . . . ."[10] The Court further acknowledged that "children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them," and that the legal disqualifications placed on children as a class "exhibit the settled understanding that the differentiating characteristics of youth are universal."[11]

---

[8] *JDB*, 564 US ___; 131 S Ct 2394.

[9] See also *Haley v Ohio*, 332 US 596, 599; 68 S Ct 302; 92 L Ed 224 (1948) (opinion by Douglas, J.) ("That which would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. This is the period of great instability which the crisis of adolescence produces. . . . [W]e cannot believe that a lad of tender years is a match for the police in such a contest."); *Gallegos v Colorado*, 370 US 49, 54; 82 S Ct 1209; 8 L Ed 2d 325 (1962) ("But a 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police."); *People v White*, 493 Mich 187, 232; 828 NW2d 329 (2013) (KELLY, J., dissenting) (stating that "[g]iven the unique characteristics of minors, they have long been afforded a special regard in the law, subjected to unique standards in areas such as contract enforcement, the ability to marry, and even the ability to vote and to serve on juries," and that "[i]n the custodial-interrogation context, the unique attributes of minors require courts to exercise 'special care' in their scrutiny of the record").

[10] *JDB*, 564 US at ___; 131 S Ct at 2403 (citations and quotation marks omitted).

[11] *Id.* at ___; 131 S Ct at 2403-2404.

The majority correctly holds that a child declarant may be declared unavailable as a witness if, as a result of his or her youth, the declarant's mental distress rises to the level of a then existing mental infirmity. I agree with the majority opinion that the legal literature supports the conclusion that children are not merely "miniature adults."[12] Four-year-old RS simply was not able to cope with the emotional trauma of testifying the way an adult could, and it therefore makes sense that a trial court might find that RS had a then existing mental infirmity under MRE 804(a)(4), even if a similarly situated adult declarant might not be found unavailable under the same subrule. In my view, the Supreme Court's acknowledgement that the criminal law must recognize that children are different from adults underscores the majority's holding in this case.

Bridget M. McCormack

---

[12] *Id.* at ___; 131 S Ct at 2397.

4

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                            No. 146295

STANLEY G. DUNCAN,

       Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                            No. 146296

VITA DUNCAN,

       Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

I would affirm the result reached by the Court of Appeals. I do not join the majority opinion because, in my view, Justice MARKMAN raises a persuasive point that RS cannot properly be categorized as suffering from an infirmity in this case.

Nevertheless, I disagree with the result reached in Justice MARKMAN's opinion, and in the majority opinion, even accepting for purposes of this appeal Justice MARKMAN'S conclusion that the use of the word "includes" within MRE 804(a) indicates that the definition of "unavailability as a witness" contains a "general principle of unavailability." Given the "importance accorded unavailability in the scheme of hearsay

exceptions," 2 McCormick, Evidence (7th ed), § 253, p 244, and because "our legal system makes public testimony in front of the fact finder an important element of the truth-seeking process," *People v Johnson*, 118 Ill 2d 501, 510; 517 NE2d 1070 (1987), in my judgment, more rigorous attempts than were made in this case should occur before declaring a child witness unavailable.

In my view, the facts of this case illustrate the tension created in our courts by attempting to apply the rule of evidence to the "unique situation of a child witness in an alleged sexual abuse case." *People v Straight*, 430 Mich 418, 422; 424 NW2d 257 (1988). Specifically, "[t]he tension originates from the conflict between two underlying policies: a desire to protect the most vulnerable of our citizens from heinous and damaging exploitation, and a need to protect the accused individual against both erroneous conviction and the devastating consequences that can follow." *Id.* at 422-423. Because I question whether our existing rule of evidence was drafted with the unique issues involving child witnesses in mind, I would consider reexamining our rule concerning unavailability, as other jurisdictions have done.

Michael F. Cavanagh

2