# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* DEMONTE JOSEPH SCOTT, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

DEMONTE JOSEPH SCOTT,

        Respondent-Appellant.

UNPUBLISHED
April 25, 2017

No. 330309
Wayne Circuit Court
Family Division
LC No. 15-519406-DL

---

Before: MURPHY, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right the order of disposition referring him to Wayne County Child and Family Services for residential placement and care. He was adjudicated guilty of two counts of armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

This case arises from an armed robbery. Respondent contends that the trial erred when it admitted a printout from a website operated by Sprint that depicted the location of DE's phone following the robbery (the Sprint Locator Map). He specifically argues that the evidence was inadmissible as hearsay, and that petitioner failed to lay a proper foundation to have the evidence admitted under MRE 803(6). We agree, but we also determine that the error was harmless.

"The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013), citing *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes . . . ." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015), citing *Duncan*, 494 Mich at 723. "We review such questions of law de novo." *Jackson*, 498 Mich at 257, citing *Duncan*, 494 Mich at 723. "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict."

*Jackson*, 498 Mich at 257, quoting *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks omitted). "[T]he effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

"Under Michigan's evidentiary rules, 'hearsay' is an unsworn, out-of-court statement that is 'offered in evidence to prove the truth of the matter asserted.' " *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013), quoting MRE 801(c) (citation omitted). "Under MRE 802, hearsay is not admissible unless it 'falls under one of the hearsay exceptions set forth in the Michigan Rules of Evidence.' " *Musser*, 494 Mich at 350, quoting *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007).

MRE 803(6) is referred to as "the business records exception to the hearsay rule[.]" *People v Fackelman*, 489 Mich 515, 536; 802 NW2d 552 (2011). MRE 803(6) provides, in pertinent part:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. [MRE 803(6).]

In *Fackelman*, 489 Mich at 536-537, the Michigan Supreme Court held that a psychiatry report was not admissible under MRE 803(b) because a record keeper or other qualified witness did not testify to establish the foundation for the report's admission. MRE 902(11) provides, in relevant part:

> (11) The original or a duplicate of a record, whether domestic or foreign, of regularly conducted business activity that would be admissible under rule 803(6), if accompanied by a written declaration under oath by its custodian or other qualified person certifying that-

>> (A) The record was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

>> (B) The record was kept in the course of the regularly conducted business activity; and

>> (C) It was the regular practice of the business activity to make the record.

"An erroneous admission of hearsay evidence can be rendered harmless error where corroborated by other competent testimony." *People v Hill*, 257 Mich App 126, 140; 667 NW2d 78 (2003), citing *People v Van Tassel (On Remand)*, 197 Mich App 653, 655; 496 NW2d 388 (1992). "[T]he effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495.

Respondent contends that petitioner failed to lay a proper foundation for the admission of the Sprint Locator Map. During the adjudication, petitioner's counsel and respondent's counsel argued over the admissibility of that Map. Respondent's counsel argued that the Map was not a "certified record," and therefore, it was "obviously not a business record[.]" The trial court did not proceed by requesting that petitioner's counsel provide a proper foundation for the record through testimony from a custodian of the record or another qualified witness. Instead, the trial court examined the record, and observed that it was a printout that listed a Sprint URL on the bottom of the page. The trial court then ruled it would allow the Sprint Locator Map to be admitted as a business record, and the trial court entered it into evidence as an exhibit.

The trial court did not adhere to the requirements of MRE 803(6) when it admitted the Sprint Locator Map without testimony from its custodian or another qualified witness, and when there was no evidence presented that the Sprint Locator Map was a certified record. However, this error was harmless because the Sprint Locator Map was not the only evidence that linked respondent to the armed robbery. Both victims, DE and AA, testified during the adjudication. DE identified respondent as the man who robbed her at gunpoint, and AA testified that respondent could have been the man who robbed her. Additionally, a handgun was discovered in respondent's home. Further, respondent has failed to demonstrate how the admission of the Sprint Locator Map affected the outcome of his adjudication. The Sprint Locator Map was the basis of Officer Collrin's testimony concerning the basis for the search warrant of respondent's home. Respondent has never contended that the search warrant was defective. Therefore, reversal on the basis of this error is unwarranted.

Respondent contends that the trial court erred when it admitted DE's in-court identification of respondent, and he also contends that her in-court identification violated his due process rights because the in-court identification was impermissibly suggestive and there was no independent basis supporting DE's identification of respondent.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1), *People v Grant*, 445 Mich 535, 545, 553; 520 NW2d 123 (1994), and *People v Griffin*, 235 Mich App 27, 44; 597 NW2d 176 (1999), overruled on other grounds by *People v Thompson*, 477 Mich 146, 148 (2007). Under MRE 103(a)(1), a party must make "a timely objection or motion to strike . . . stating the specific ground of objection" to claim a ruling admitting evidence was erroneous.

During the adjudication, respondent's counsel made a motion to strike DE's testimony because petitioner did not provide a copy of the photographic lineup used to identify respondent prior to the adjudication, and thus, respondent's counsel argued that he was unable to effectively cross-examine DE. The trial court ultimately denied the motion to strike. Therefore,

respondent's argument that the trial court erred when it admitted DE's in-court identification of respondent is preserved.

Generally, an issue is preserved for appellate review when it is raised before and addressed and decided by a trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), citing *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). However, the remedy for an unduly suggestive identification is suppression of the in-court identification, unless there was an independent basis for admission of the identification. *People v Gray*, 457 Mich 107, 114 n 8; 577 NW2d 92 (1998) (citation omitted). "A motion to suppress evidence must be made prior to trial or, within the trial court's discretion, at trial." *People v Gentner, Inc*, 262 Mich App 363, 368; 686 NW2d 752 (2004), quoting *People v Carroll*, 396 Mich 408, 411-412; 240 NW2d 722 (1976) (quotation marks and citation omitted). During the adjudication, respondent did not argue that DE's in-court identification was unduly suggestive, nor did he argue that DE's identification violated his right to due process, and he did not make a motion to suppress DE's in-court identification. Therefore, respondent's arguments that DE's in-court identification was unduly suggestive and violated his right to due process are unpreserved.

"The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004), citing *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Harris*, 261 Mich App at 51, citing *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). However, "[t]his Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights." *People v Kissner*, 292 Mich App 526, 541; 808 NW2d 522 (2011), citing *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999). To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009), citing *Carines*, 460 Mich at 763. "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015), citing *Carines*, 460 Mich at 763.

"Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do." *Perry v New Hampshire*, 565 US 228, 244; 132 S Ct 716; 181 L Ed 2d 694 (2012). However, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id*. at 245.

On appeal, respondent contends that the photographic lineup the police conducted with DE was a "logical impossibility" because there was no way for the police to have obtained his photograph prior to his arrest, and therefore, the trial court should not have admitted DE's subsequent in-court identification of respondent. From that premise, respondent also contends that it was "more likely than not" that petitioner failed to provide copies of the photographs used in the lineup because respondent's photograph could not possibly be in the lineup. Respondent contends that the "logical impossibility" of the photographic lineup was evinced by these facts: (1) the police did not possess respondent's photograph, (2) his sister, AM, and his girlfriend,

DM, testified that they heard DE express doubt over her identification of respondent prior to the adjudication, (3) the police "conveniently 'misplaced' " the photographic lineup prior to the adjudication, (4) AA expressed doubt over whether respondent was the man who robbed her during the adjudication, and (5) the police targeted respondent using circumstantial evidence.

Respondent has failed to provide any evidence that establishes police misconduct took place with regards to DE's pretrial identification of respondent. Instead, respondent has merely provided unfounded speculation. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority." *People v Clark*, 315 Mich App 219, 233-234; 888 NW2d 309 (2016) (quotation marks and citation omitted).

Regardless, respondent's unfounded speculation is contrary to the record. The linchpin of respondent's theory is that it would have been impossible for the police to have obtained his photograph prior to his arrest because he had no previous encounters with law enforcement, and thus, the police would not be in possession of his photograph or name. But during the adjudication, petitioner's counsel explained that in juvenile cases when mug shots are unavailable, social media photographs or school photographs are used. As for respondent's contention that it would have been impossible for the police to locate photographs prior to his arrest because the police were unaware of his name, we note that police obtained the name of respondent's mother by examining calls made from DE's phone after the armed robbery took place. It is far from an impossibility to assume that the police then obtained respondent's name and photograph by cross-referencing public records to see if respondent's mother had any children that fit the description provided to police by DE and AA.

Respondent also contends that DE's in-court identification was impermissibly suggestive, that there was no independent basis supporting her identification of respondent, and that the identification violated respondent's right to due process of law.

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001) (citations omitted). "Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do." *Perry*, 565 US at 244. However, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id*. at 245.

Courts weigh the following factors when determining whether "an independent basis exists for the admission of an in-court identification: (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant." *People v Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000), citing *Gray*, 457 Mich at 116.

Respondent contends that DE's in-court identification was impermissibly suggestive because he was seated next to his counsel during the adjudication, and due to the fact that DE testified that she recognized respondent at school[1] prior to the adjudication because she had observed him at prior hearings before the trial court. Respondent's argument is not congruent with the record because DE testified that she recognized respondent at school "[b]ecause of who he is." Regardless, respondent's argument is without merit. Respondent has failed to demonstrate that DE's in-court identification was tainted by improper state conduct, and he has failed to establish that there was a substantial likelihood he was misidentified by DE.

Even if this Court were to conclude that DE's in-court identification was impermissibly suggestive, her identification would have still been admissible because there was an independent basis for her in-court identification. While DE did not have any prior relationship with respondent or have prior knowledge of him, she had ample opportunity to observe respondent while he robbed her. She testified that the robbery took place in close proximity to a functional streetlight. DE also testified that respondent pressed his handgun into her side during the robbery, and therefore, she was in very close to proximity to respondent during the robbery. There is no indication in the record that DE's initial description of respondent was inaccurate. The only individual DE identified as the perpetrator of the armed robbery was respondent. She even testified that she was "very sure" that she identified the man who robbed her during the photographic lineup because she "took another photo and put it over his forehead like the hat, and [she] was able to identify him," and that she had "no doubt" that respondent was the man who robbed her. Therefore, respondent has failed to demonstrate that the trial court erred when it admitted DE's in-court identification, or that DE's in-court identification violated his right to due process.

Affirmed.

/s/ William B. Murphy
/s/ Christopher M. Murray
/s/ Michael J. Kelly

---

[1] Respondent testified that he began attending classes at DE's school after he was released from "juvenile." We infer that respondent was referring to his release from a secure juvenile detention facility.