*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALBERT HAYWOOD, JR.,

Defendant-Appellant.

UNPUBLISHED
January 2, 2020

No. 344797
Wayne Circuit Court
LC No. 17-009876-01-FC

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for first-degree criminal sexual conduct (CSC-I) (mentally disabled), MCL 750.520b(1)(h), and second-degree criminal sexual conduct (CSC-II) (mentally disabled), MCL 750.520c(1)(h). Defendant was sentenced to 15 to 30 years for his CSC-I conviction, and 10 to 15 years for his CSC-II conviction. We affirm defendant's convictions, but remand for resentencing.

## I. FACTS

This case arises from defendant's sexual assault of the 17-year-old victim. The victim's adoptive father, John, and defendant's father are stepbrothers. Defendant is an ordained minister who married John and his current wife, Mahala. John, Mahala, the victim, and her brothers, Iriash and Lawrence, all lived together. The victim's other brother, Lionel, did not reside in the home.

Even though the victim was 17 years old in July 2017, she had a mental disability and was cognitively impaired. The victim was not independent; she could not be left alone. John described the victim as "a little off, little slow." The victim was in special education because of her cognitive impairment, which placed her at a first-grade or second-grade level in math, reading, and writing—about 10 grade levels below her peers.

It was alleged that defendant sexually penetrated the victim on three different occasions at her home—in the basement, the backyard, and her bedroom. The first incident occurred in the victim's basement, when two of the victim's brothers were home. The victim was watching the

-1-

television, alone, when defendant came into the basement. While sitting, defendant unzipped his pants, and with the victim's pants pulled halfway off, penetrated her vagina with his penis. The victim did not tell anyone about the incident because she was scared.

The second incident occurred in the victim's backyard. Defendant followed the victim when she went outside to get some fresh air; the victim's parents and brother remained in the home. While sitting, defendant unzipped his pants, pulled out his penis, and put it into the victim's vagina while her "clothes" were halfway down. Defendant asked the victim how it felt; the victim stated that it did not feel good. When defendant took his penis out of the victim, he began to "play with it" with his hand.

The third incident occurred on July 5, 2017, in the victim's bedroom, when the victim's parents were away at a convention. John asked defendant to check on the victim and the other children while he was out of town. Iriash first encountered defendant that day when Iriash arrived home at 4:00 p.m. or 5:00 p.m. Defendant was standing in the driveway on his cell phone. Iriash and defendant went into the home, and defendant inquired as to the victim's whereabouts. Iriash and defendant went to the victim's bedroom. The clothed victim was alone in her bedroom laying in the bed with covers over her. Defendant went inside the bedroom while Iriash remained in the doorway; defendant closed the door. Iriash left the victim and defendant alone in the bedroom. While in the bedroom, defendant removed all of his clothing, and the victim's. Defendant then inserted his penis into the victim's vagina.

## II. UNAVAILABLE DECLARANT

Defendant argues that the trial court erred in finding that the victim was unavailable under MRE 804 and in admitting her preliminary examination testimony at trial, thus, violating his right of confrontation. This Court reviews de novo claims of constitutional error. *People v McPherson*, 263 Mich App 124, 131; 687 NW2d 370 (2004).

In *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the Supreme Court held that the Confrontation Clause does not allow the admission of ex parte "testimonial" statements. However, "[f]ormer testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). Under MRE 804(a)(4), a witness is unavailable if the witness cannot "testify at the hearing because of . . . then existing . . . mental illness or infirmity." Because "infirmity" is defined as "the quality or state of being infirm," and "infirm" is defined as "feeble or weak in body or health," and "mental" is defined as "of or pertaining to the mind," and "of, pertaining to, or affected by a disorder of the mind," when taken together "mental infirmity" "encompasses weakness or feebleness of the mind." *People v Duncan*, 494 Mich 713, 725-726; 835 NW2d 399 (2013) (quotation marks and citations omitted).

In *Duncan*, the Court held that the four-year-old victim was unavailable at trial because of a then-existing mental infirmity. *Id*. at 730. At trial, the victim had tears in her eyes, was wringing her hands, and began crying, rendering her unable to answer questions. *Id*. at 719. Our Supreme Court held:

Under the plain language of [MRE 804], and with our recognition of the unique mental and emotional limitations of youth, we hold that [the victim] had a then existing mental infirmity in this case because the facts show that she was unable to sufficiently cope with her significant emotional distress and give testimony at trial, a result of her particularly young age. Therefore, she was unavailable within the plain meaning of MRE 804(a)(4). [*Id.* at 728.]

Here, the victim was 18 years old at the time of the trial. Several days before trial, the prosecution filed a motion seeking to have the victim declared unavailable. In relevant part, the motion averred:

5. During the interview on May 30, 2018, complainant shared with [assistant prosecuting attorneys (APAs)] Jarczewski and Weingarden that she wants to die because of what defendant did to her. [The victim] was asked if she had a plan to kill herself and she said she did. She wanted to shoot herself with her father's gun. She explained that the gun is locked up and there are no other guns in the home. [The victim] told some school friends she wants to kill herself and they convinced her not to do it. [The victim] displayed intense emotions during the interview. She cried while discussing the events. She interrupted the interview a few times and looked toward the ceiling and talked to God and to her mother, who is deceased. [The victim] froze several times for over a minute before answering some of the questions. It was clear she was experiencing great distress when talking about the facts. [The victim] said when she's not talking about the crimes against her, she feels okay.

6. APAs Jarczewski and Weingarden met with the Complainant's step-mother, Mrs. Dixon, who brought her to the interview. The prosecutors shared their concerns about [the victim's] mental health. Mrs. Dixon was also told by [the victim] that she wanted to die. [The victim] was admitted to Detroit Receiving Hospital on July 5, 2017[,] for suicidal ideation. She has been suicidal since the offense occurred. [The victim] was in counseling at the Development Center in Detroit, but is not presently in counseling.

On June 4, 2018, before trial began, an evidentiary hearing was held concerning this motion to declare the victim unavailable for trial. At the evidentiary hearing, the victim was unresponsive to some questions, and there were long periods of silence. With instruction from the trial court, the victim ultimately testified that she would be able to tell the jury what happened to her.

During direct testimony on June 6 and 7, 2018, the victim was unresponsive to several questions, or could not remember what happened. However, the victim answered the questions when prompted by the trial court. On June 7, 2018, the prosecution moved to have the victim declared unavailable because she was "unwilling to answer questions." However, defense counsel disagreed, arguing that defendant's right of confrontation would be violated if the victim was declared unavailable because she answered the questions when prompted by the trial court, and the trial court had to "make her testify." The trial court stated:

Well, I don't even know that it's refusing. She clearly has mental deficits. And her testimony yesterday was painstakingly slow in responding. And many times she didn't respond, or I had to prompt her and she would finally respond.

Today she's not even responding at all when I prompt her. There's something definitely–I do agree with the prosecutor that the characterization of her testimony by defense counsel is inaccurate. I don't believe that she is answering when she feels like it. There's more going on inside of her head there, and you can't get answers out of her.

She is very withdrawn, very slow to respond, if responding at all, and I don't believe we're going to get any more testimony out of her at this point.

The trial court also noted that the victim was "markedly different today than she was yesterday."

Defendant contends that this case is analogous to *People v Sardy*, 318 Mich App 558; 899 NW2d 107 (2017); however, *Sardy* is distinguishable because it only involved a lack of memory, unlike this case. The *Sardy* Court noted that the witness was available because a witness "who appears at trial but claims memory loss is 'available' for purposes of the Confrontation Clause." *Id*. at 565. Furthermore, this Court stated:

Although [the] defendant was able to cross-examine the victim at the preliminary examination, [the] defendant was not given the opportunity to cross-examine her *at trial* relative to the CSC-II charges, at which point the victim was claiming a lack of any memory of the sexual assaults. The jury was not presented with cross-examination testimony regarding the fact that the victim could no longer recall or remember the substance of the claims she had made at the time of the preliminary examination. The trial court's limitation of the victim's cross-examination at trial thus deprived [the] defendant of the opportunity to potentially undermine entirely the charges of CSC-II. [*Id*. at 565-566.]

This case is more analogous to *Duncan*. Although the victim herein is not a child, like the victim in *Duncan*, she was cognitively impaired and was at a first-grade or second-grade level, much like a child. The victim showed signs of mental infirmity at trial. She became silent and unresponsive to questions; questions had to be repeated by the trial court. Additionally, the trial court was well aware of the victim's recent emotional breakdown, and her expression of suicidal thoughts related to testifying in open court. Against this backdrop, the trial court's conclusion that there was "more going on inside [the victim's] head" is evidentiarily well-supported, as is the court's conclusion that the victim would not be able to provide more testimony.

Ultimately, as in *Duncan*, 494 Mich at 729-730, there was evidence that the victim could not overcome her severe emotional distress and give testimony at trial both because she was mentally infirm and emotionally traumatized. Given the victim's cognitive impairment, and the trial court's opportunity to see the victim on the stand, the trial court's finding of unavailability under MRE 804(a)(4) was not clearly erroneous.

When a witness is unavailable, "testimony given by the person at an earlier hearing is not excluded by the hearsay rule if the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony through cross-examination." *People v Meredith*, 459 Mich 62, 66-67; 586 NW2d 538 (1998); MRE 804(b)(1). Here, defense counsel cross-examined the victim at the preliminary examination regarding the charges, and there was a similar motive to develop the victim's testimony. Because the witness was unavailable, and because defendant had "both the 'opportunity' and a 'similar motive' to develop" the victim's testimony, her preliminary examination testimony was admissible under MRE 804. *Meredith*, 459 Mich at 67. Therefore, the trial court did not abuse its discretion in allowing the preliminary examination testimony to be read at trial after finding the victim unavailable, and defendant's right of confrontation was not violated.

## III. OFFENSE VARIABLE (OV) 11

Defendant argues that the trial court erred in assessing 50 points for OV 11 (criminal sexual penetration) rather than zero points because it assessed points for two incidents that did not arise out of the sentencing offense. The prosecution agrees that under *People v Johnson*, 474 Mich 96; 712 NW2d 703 (2006), OV 11 was improperly assessed 50 points rather than zero points.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted), superseded in party by statute as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019).]

OV 11 is assessed 50 points if "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a). Zero points are assessed if "[n]o criminal sexual penetration occurred." MCL 777.41(1)(c). In assessing OV 11, the trial court must "[s]core all sexual penetrations of the victim by the offender *arising out of* the sentencing offense." MCL 777.41(2)(a) (emphasis added). Notably, the trial court must "not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." MCL 777.41(2)(c).

As the parties agree, the trial court erred in assessing 50 points for OV 11. Defendant was charged with three counts of CSC-I for sexually penetrating the victim on three different occasions. Defendant was acquitted of two counts of CSC-I—count 1 (basement) and count 2 (backyard), but was convicted of count 3 (bedroom), CSC-I involving sexual penetration, and count 4, CSC-II, not involving sexual penetration. At sentencing, the trial court assessed 50 points for OV 11 because it found by a preponderance of the evidence that the two penetrations, for which defendant was acquitted, occurred. However, our Supreme Court recently held "that due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 152934); slip op at 22.

Even so, defendant correctly contends that the trial court assessed 50 points for two separate incidents that did not arise out of the sentencing offense. In *Johnson*, 474 Mich at 97, the Court held that MCL 777.41(2)(a) allows a trial court to assess points only for "those penetrations 'arising out of the sentencing offense.'" As *Johnson* explained:

> Something that "aris[es] out of," or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen. For present purposes, this requires that there be such a relationship between the penetrations at issue and the sentencing offenses. [*Id*. at 101 (alteration in original).]

However, when each penetration occurs on a separate occasion, one does not arise out of the other. *Id*. at 100-102. "[T]his standard requires more than the mere fact that the penetrations involved the same defendant and victim." *People v Johnson*, 298 Mich App 128, 132; 826 NW2d 170 (2012).

The two penetrations, not forming the basis of the sentencing offense, did not arise out of the sentencing offense. In *Johnson*, as here, the penetrations were charged in separate counts, as they occurred on separate occasions. *Johnson*, 474 Mich at 97, 100. Additionally, like in *Johnson*, the victim testified that the three sexual penetrations occurred on different dates. *Id*. at 102-103. The two penetrations occurring respectively in the basement and backyard, occurred on different dates than the sentencing offense, which occurred in the bedroom. Therefore, "there is no evidence that the penetrations arose out of each other." *Id*. at 102. Because the sexual penetrations did not arise out of each other, the trial court erred in assessing 50 points for OV 11 rather than zero points.

If OV 11 is assessed 50 points, defendant's guidelines range is 108 to 180 months. If OV 11 is properly assessed zero points, the guidelines range would be 51 to 85 months, MCL 777.62, barring any other scoring changes on remand. Because defendant's CSC-I sentence is based upon an inaccurate calculation of the guidelines range, defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82; 711 NW2d 44 (2006). Because defendant must be resentenced, we need not decide whether defendant's sentence is disproportionate and unreasonable.

Defendant's convictions are affirmed, but the case is remanded for resentencing. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher

-6-