*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

DEVONTAE DAYSHAWN PERRY,

   Defendant-Appellant.

UNPUBLISHED
July 30, 2020

No. 344863
Wayne Circuit Court
LC No. 18-000512-01-FC

Before: MARKEY, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of felony murder, MCL 750.316(1)(b) (murder committed during the perpetration of robbery), second-degree murder, MCL 750.317, armed robbery, MCL 750.529, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.11, to concurrent prison terms of life without parole for his felony murder conviction,[1] 20 to 60 years for his armed robbery conviction, and 2 to 7 years for his felon-in-possession conviction, all to be served consecutively to the statutory two-year prison term for his felony-firearm conviction. We affirm.

---

[1] Defendant was charged with open murder; the jury acquitted defendant of first-degree premeditated murder, but convicted defendant of both first-degree felony murder and second-degree murder, despite the fact that there was only one homicide victim. At sentencing, the parties agreed that the sentence for second-degree murder would be "consumed or subsumed within the sentence for first-degree felony murder" and that accordingly the trial court did not need to impose a sentence for the second-degree murder conviction. Consequently, the trial court did not sentence defendant for his second-degree murder conviction.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On December 13, 2017, the decedent, Samuel Newell, arranged to meet a man to whom he had agreed to sell marijuana. Accompanied by three friends, Newell drove to a prearranged location, where a man in a black hooded sweatshirt waited by a car. When Newell rolled down his window to ask the man if he was the person who had arranged to purchase marijuana, the man drew a gun and demanded that all of the occupants of the vehicle give him their belongings. Two of the passengers, Shawndarius Smith and Joshua Matthews, testified that they recognized defendant as the man with the gun, having attended the same high school as he had attended. The third passenger, Demetrius Johnson, testified that he identified the man as defendant after seeing a photograph of defendant on Facebook that Smith and Matthews were viewing. The passengers in Newell's vehicle fled on foot. They testified that they heard gunshots shortly thereafter. A witness who lived in the area, Canica Currie, also testified to hearing gunshots that evening and to calling 911. From the window of her home, Currie saw a man holding a gun and wearing black clothing "[w]ith something over the face" get into the passenger side of a dark-colored car, which then drove away. Police officers discovered Newell dead from a gunshot wound in a nearby backyard.

Photographs were forensically recovered from defendant's cellular phone. They showed defendant holding a weapon similar to the weapon Smith and Matthews had testified to seeing in defendant's hands on the night of the shooting.[2] Prior to trial, defense counsel asked the trial court to adjourn the trial for several months so that he could subpoena a Google entity for information about the photographs. The trial court denied the motion. The photographs were admitted at trial; a forensic examiner testified that they had been "time stamped" with the date they were last modified, which was about two hours after the murder, and that modification could include deletion. The prosecution argued that, shortly after defendant murdered Newell, he deleted the photographs in an attempt to hide incriminating evidence. Photographs of the victim's body were also admitted into evidence.

After the close of proofs, defense counsel requested a special jury instruction regarding eyewitness identification testimony. After reviewing the proposed instruction, the trial court declined to give it, and instead gave a standard jury instruction.

Defendant was convicted and sentenced as described. This appeal followed. After filing his claim of appeal, defendant moved this Court to remand for an evidentiary hearing and for an opportunity to file a motion for a new trial on the basis of newly discovered evidence. Appended to his motion were social media photographs showing Smith and Johnson posing with firearms, as well as their text messages discussing firearms, which defendant argued could have been used to

---

[2] Smith and Matthews both testified that the firearm was a semiautomatic pistol with an extended magazine. Johnson testified that he could not identify what type of gun was used because of the darkness and the fact that he was paying attention to the man's face; however, on cross-examination, when Johnson was asked whether the gun was a revolver or semiautomatic, he answered that "[i]t wasn't no semi."

impeach their testimony at trial. This Court denied defendant's motion without prejudice to this Court deciding the issue on plenary review.[3]

## II. ADJOURNMENT

Defendant argues that the trial court should have granted an adjournment to allow him to subpoena Google about when the photographs of defendant holding a gun were taken. We disagree. We review for an abuse of discretion a trial court's decision to deny a motion for adjournment. *People v Coy*, 258 Mich App 1, 18-19; 669 NW2d 831 (2003). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

MCR 2.503(C)(2) provides that a party may move to adjourn a trial on the basis of unavailable evidence if the evidence is material and the party has made diligent efforts to produce it. "A motion for adjournment must be based on good cause." *Coy*, 258 Mich App at 18. To determine whether a defendant's motion is based on good cause, the trial court must consider

> whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments. [*Id*.]

Additionally, this Court may not reverse a trial court's decision concerning adjournment unless the defendant demonstrates that he or she was actually prejudiced because of the trial court's denial. *Coy*, 258 Mich App at 18-19. An error is prejudicial only if it appears more probable than not that the error affected the outcome of the case. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

Even if the trial court erred by denying defendant's request for an adjournment, defendant cannot show that he was actually prejudiced. Defendant sought an adjournment to determine when the photographs were created. However, the detective who extracted the photographs testified that the photographs' modification dates most probably indicated when the photographs were deleted, because the photographs were not located in the phone's folders but were located during extraction of the phone's data. The prosecution did not argue that defendant had taken the photographs on the night of the murder, or at any particular point in time; rather, the prosecution merely argued that defendant had deleted photographs on the night of the murder and that this was evidence of defendant's consciousness of guilt. Accordingly, it is not more probable than not that an adjournment to determine when the photographs were created would have affected the outcome of the case, because the photographs' date of creation was not a material fact at issue. *Lukity*, 460 Mich at 495; MCR 2.503(C)(2).

---

[3] See *People v Perry*, unpublished order of the Michigan Court of Appeals, entered August 2, 2019 (Docket No. 344863).

## III. ADMISSION OF PHOTOGRAPHS

Defendant also argues that the trial court violated his due-process rights when it admitted photographs (a) depicting him holding a firearm, and (b) of Newell's body, because they were substantially more prejudicial than probative. We disagree.

We review for an abuse of discretion challenges to a trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law. *Id*. at 722-723. We review de novo preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it. *Id*. at 723.

The Michigan and United States Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. Criminal prosecutions must comply with " 'prevailing notions of fundamental fairness.' " *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006), quoting *California v Trombetta*, 467 US 479, 485; 104 S Ct 2528; 81 L Ed 2d 413 (1984). "[A]n important element of a fair trial is that a jury only consider relevant and competent evidence bearing on the issue of guilt or innocence . . . ." *People v Hana*, 447 Mich 325, 350; 524 NW2d 682 (1994) (quotation marks and citations omitted).

A trial court may only admit relevant evidence. MRE 402. Relevant evidence is evidence that has any tendency to make a fact of consequence more or less likely to be true. MRE 401. Even if evidence is relevant, the trial court may not admit it if the danger of its prejudicial effect substantially outweighs its probative value. MRE 403. The prejudicial effect of evidence substantially outweighs its probative value when the evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight, or when use of the evidence is inequitable. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

### A. PHOTOGRAPHS OF DEFENDANT HOLDING A FIREARM

Defendant argues that the photographs of him holding a firearm similar to that used by the robber were not probative because they did not make it more likely that defendant had a firearm on the day of the incident. Defendant's argument lacks merit because, as stated, the evidence was offered to show consciousness of guilt, not the likelihood that defendant possessed a gun (or the gun depicted in the photographs) on the day of the incident.

Evidence is probative if it has *any* tendency to make a fact of consequence more or less probable. *People v Crawford*, 458 Mich 376, 389-390; 582 NW2d 785 (1998). Evidence of the defendant's consciousness of guilt is relevant, and evidence showing consciousness of guilt may be highly probative. *People v Schaw*, 288 Mich App 231, 237-238; 791 NW2d 743 (2010). Acts that show consciousness of guilt include acts that can be viewed as efforts to destroy evidence. *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008).

In this case, Smith and Matthews testified that the firearm used during the robbery was a black handgun with an extended magazine. The 911 call from Currie was placed at 8:59 p.m., and 10 photographs of defendant holding a weapon similar to that used by the robber were deleted between 10:42:32 p.m. and 10:43:36 p.m. A police detective testified that the modification time

likely indicated when the photographs were deleted, and that multiple photographs would have the same modification time if they were selected for deletion at the same time. Defendant's deletion of these photographs could be viewed as an effort to destroy evidence that defendant had access to a handgun similar to the handgun used in the crime, regardless of whether the photographs were taken on the day of the incident. This evidence was highly probative because it showed consciousness of guilt. *Id*.

Moreover, the photographs were not unfairly prejudicial. Evidence is unfairly prejudicial when "a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect . . . ." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (quotation marks and citation omitted). Evidence is unfairly prejudicial if it leads to the danger of confusing the issues, misleading the jury, or the presentation of needlessly cumulative evidence. See *People v Watkins*, 491 Mich 450, 489, 486; 818 NW2d 296 (2012). In this case, the photographs were not misleading; defendant's argument to the contrary notwithstanding, the record shows that prosecution argued that the photographs were *deleted* shortly after the murder, not that they were *taken* shortly after the murder. The photographs were not cumulative and did not lead to the danger that the jury would become confused about whether defendant possessed a gun (or that gun) on the day of the incident. While evidence that defendant had at some point possessed a firearm that was similar to the firearm used in the robbery was damaging, the evidence was not merely minimally probative or likely to be weighed out of proportion to its logical effect. *Mills*, 450 Mich at 75. We conclude that the trial court did not abuse its discretion by admitting the photographs of defendant holding a handgun similar to that used in the robbery. *Duncan*, 494 Mich at 722.

Defendant also argues that the trial court erred by admitting the time stamps on the photographs because they were hearsay. We disagree.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible, unless it is subject to a hearsay exception. MRE 802; *Duncan*, 494 Mich at 724.

In this case, the detective who extracted the photographs from defendant's cell phone testified that the phone's software program generated a time-stamp every time a file was modified. The detective further testified that a software program had extracted the information from defendant's phone and exported the data into a PDF file. There is no indication that the detective or any other human being had any role in associating the time stamps with the photographs; the process was purely mechanical. Evidence generated entirely by a machine without the input of any person "does not constitute hearsay because a machine is not a person and therefore not a declarant capable of making a statement." *People v Dinardo*, 290 Mich App 280, 291; 801 NW2d 73 (2010); MRE 801. Accordingly, the time stamps were not hearsay and trial court did not err by admitting them into evidence.

## B. PHOTOGRAPHS OF NEWELL'S BODY

Defendant additionally argues that the trial court erred by admitting photographs of Newell's body because they were gruesome and because there was no dispute about how Newell

had died. We conclude that the trial court's decision to admit the photographs fell within the range of reasonable and principled outcomes.

Again, a trial court may only admit relevant evidence. MRE 402. Even if evidence is relevant, a trial court should not admit it if the danger of its prejudicial effect substantially outweighs its probative value. MRE 403. A trial court may admit gruesome photographs, see *Mills*, 450 Mich at 76, and need not "protect the jury from all evidence that is somewhat difficult to view." *Id*. at 79. When a photograph depicts an accurate factual representation of the injuries a victim suffered and does not present an enhanced or altered representation, the probative value of the photograph is generally not substantially outweighed by the prejudicial effect of its gruesome nature. See *id*. at 77. The trial court did not err by declining to admit the photographs in this case merely because they were gruesome.

Further, defendant's argument that the trial court should have excluded the photographs because there was no dispute about how Newell died lacks merit. "Photographs may properly be used to corroborate other evidence and are not excludable simply because they are cumulative of a witness's oral testimony." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). The photographs depicted the locations of Newell's injuries, including the abrasions on his face and the entrance wound. The trial court ruled that the photographs were relevant and "not particularly graphic." We conclude that this ruling was within the range of principled outcomes.

IV. UNAVAILABLE WITNESS TESTIMONY

Defendant also argues that the trial court erred by finding that the prosecution diligently attempted to secure Smith as a witness and by determining that he was unavailable and admitting his preliminary examination testimony. We disagree.

Both the United States and Michigan Constitutions protect a defendant's right to confront the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. Hearsay is generally inadmissible, unless it is subject to a hearsay exception. MRE 802; *Duncan*, 494 Mich at 724. If a declarant is unavailable, the declarant's former testimony at another hearing in the same proceeding is not excluded by the hearsay rule. MRE 804(b)(1). A declarant is unavailable if, among other reasons, the declarant is unable to testify at a hearing because of then-existing illness or infirmity. MRE 804(a)(4).

A trial court does not violate a defendant's right to confrontation by admitting the prior testimony of an unavailable witness if the prosecution made good-faith efforts to secure the witness's presence at trial and the testimony is sufficiently reliable. *Barber v Page*, 390 US 719, 724-725; 88 S Ct 1318; 20 L Ed 2d 255 (1968); *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). Whether the prosecution made good-faith efforts to secure a witness depends on the circumstances of the case. *Bean*, 457 Mich at 684. A trial court need only find that the prosecution engaged in reasonable efforts to locate and secure the witness, not that it did everything possible. *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988). See *People v Eccles*, 260 Mich App 379, 391; 677 NW2d 76 (2004).

In this case, the prosecution had named Smith as a witness it intended to call at trial; however, during trial, the prosecution informed the trial court that Smith's mother had recently

reported that he was in the hospital with a fever and that he had undergone a blood transfusion. Defense counsel argued that the prosecution had not diligently attempted to secure the witness because no one had visited the hospital to verify that Smith was actually there. After a recess, the trial court stated that the court clerk had called the hospital, and that a detective had consulted Smith's electronic tether records, both of which confirmed that he was in the hospital.

The record indicates that Smith was unavailable and that the prosecution informed the trial court of this in a timely manner—the prosecution informed the trial court on Monday, June 11, 2018 that Smith's mother had contacted the officer in charge about Smith's hospitalization the previous Friday, and the prosecution had received an update on his condition that morning from Smith's mother. While the prosecution arguably could have done more to confirm that Smith was hospitalized before requesting that his preliminary examination testimony be admitted, the efforts it did make were reasonable. *Cummings*, 171 Mich App at 585. Further, additional efforts would not have changed the fact that Smith was seriously ill and in the hospital. MRE 804a(4)(a). The trial court did not err by finding that Smith was unavailable or by admitting his preliminary examination testimony.

## V. JURY INSTRUCTIONS

Defendant argues that the trial court erred by rejecting his proposed special jury instruction regarding eyewitness identification. We disagree.

Both the Michigan and United States Constitutions require a jury to determine that a defendant is guilty of every element of the crime with which he or she is charged. *People v Carines*, 460 Mich 750, 761; 597 NW2d 130 (1999). The jury instructions "must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses, or theories if there is evidence to support them." *People v Reed*, 393 Mich 342, 349-350, 224 NW2d 867 (1975) (citations omitted). "When reviewing a claim of instructional error, this Court views the instructions as a whole to determine whether the issues to be tried were adequately presented to the jury." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). We review for an abuse of discretion a trial court's decision regarding whether a specific jury instruction applies. *Id*. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

Defense counsel requested a 10-page special instruction on eyewitness identification that incorporated scientific studies into the fallibility of memory. The proposed instruction provided that the prosecution had the burden to prove defendant's identity as the perpetrator of the crime beyond a reasonable doubt and that defendant did not have the burden to establish that someone else committed the crime. It encouraged the jury to determine whether an eyewitness's identification was trustworthy and believable. It stated that eyewitness identifications must be scrutinized carefully and warned that there was a risk of mistaken identification. It expounded on the statement that "[h]uman memory is not foolproof" by explaining the stages of memory and how memory could be affected at each stage. The proposed instruction encouraged the jury to think about the circumstances under which the identification was based and to consider that good-faith identifications might be mistaken. It stated that if the jury found that the out-of-court identification was not reliable, it should discard the in-court identification if it was a product of the mistaken out-of-court identification. It detailed five factors (a witness's opportunity to view

and degree of attention, prior description, confidence and accuracy, elapsed time, and cross-racial effects) to be considered, and expounded in detail on factors that could affect each of those factors. It also provided instructions for evaluating identifications occurring during police show-up procedures, and for assessing police conduct during police lineup procedures. Finally, it instructed the jury to think about whether the witness had been exposed to descriptions or information from outside influences, such as the media, that might affect the reliability of the witness's identification. The trial court declined to give the instruction, stating that the proposed instruction was "rather cumbersome," as well as "unnecessary and potentially confusing for the jury."

Defendant first argues that the trial court's failure to issue his special jury instruction was structural error. We disagree. A trial court's failure to instruct a jury regarding an element of an offense is a structural error subject to automatic reversal. *People v Duncan*, 462 Mich 47, 52-53; 610 NW2d 551 (2000). In this case, the trial court gave a standard jury instruction about the identity element of the charged offenses—it simply did not issue defendant's preferred, non-standard instruction.

Defendant also argues that the trial court's instruction impermissibly shifted the burden of proof to defendant. However, the trial court instructed the jury that the prosecution had to prove beyond a reasonable doubt that defendant committed the crime. The record does not support defendant's argument.

Defendant further argues that the standard identity instruction did not fairly represent the issues at hand and reduced the prosecution's burden to prove defendant's identity. If a standard instruction does not address the issue presented in the defendant's case, a trial court may give a special instruction to properly inform the jury of the applicable law. *People v Bush*, 315 Mich App 237, 245; 890 NW2d 370 (2016). Any additional instructions "must be patterned as nearly as practicable after the style of the model instructions and must be concise, understandable, conversational, unslanted, and nonargumentative." MCR 2.512(D)(4).

Given the circumstances of this case, the trial court's standard identity instruction adequately addressed the issue of whether Smith, Matthews, and Johnson had adequately identified defendant as the armed man who had robbed them. The trial court's instruction required the jury to consider a variety of factors, including a witness's opportunity to see the offender, how long the witness was watching, whether the witness had known the offender previously, how far away the witness was, whether the area was lighted, the circumstances of identification and how much time had passed since the crime, how sure the witness was of the identification, and the witness's state of mind.

Additionally, defendant's proposed instruction did not comply with the court rule. It was repetitive and included instructions on such matters as cross-racial effects on identification and whether the witnesses had been exposed to the media, when there was no indication that these potential issues were factors in this case. Defendant's proposed instruction also expounded upon various scientific studies related to human memory in a way that was inappropriate for a jury instruction; if defendant had wished to raise these issues in his defense, he could have done so by way of an expert witness or similar vehicle. See MRE 702; MCR 2.512(D)(4). A jury instruction was not the appropriate place to introduce these concepts. Moreover, defendant's proposed

instruction was not concise and had strong stylistic differences compared to the standard instructions. MCR 2.512(D)(4).

We conclude that the trial court's decision not to issue defendant's proposed special jury instruction fell within the range of reasonable and principled outcomes. *Armstrong*, 305 Mich App at 239. The standard jury instruction adequately presented the issues to be tried to the jury. *Id*.

## VI. NEWLY DISCOVERED EVIDENCE

Defendant argues that newly discovered evidence requires this Court to remand for an evidentiary hearing and to allow him to move for a new trial. We disagree, and conclude that defendant has not properly supported his motion for remand.

A motion for a new trial may be filed in accordance with the remand procedures provided in MCR 7.211(C)(1). This Court may remand a case for an evidentiary hearing in its discretion. MCR 7.216(A)(5). An appellant who files a motion for remand must support the motion "by affidavit or offer of proof regarding the facts to be established at a hearing." MCR 7.211(C)(1)(a). Remand for an evidentiary hearing regarding whether newly discovered evidence requires a new trial is inappropriate when the allegations in the briefs and supporting affidavit "have no official record support." *People v Clark*, 68 Mich App 48, 53; 241 NW2d 756 (1976).[4] See also *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007) (regarding a motion to remand for a hearing regarding ineffective assistance of counsel).

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012) (quotation marks and citation omitted).]

Defendant's motion for remand lacks an affidavit or offer of proof. Defendant has attached exhibits to his appellate brief in the form of four photographs and a text message log. Each is undated. Because these photographs are undated and no affidavit establishes when the photographs or conversation occurred, defendant has not established that he could not have discovered and produced the evidence at his trial. *Id*. Moreover, defendant has not shown that this evidence, even if newly-discovered, would have made a different result probable on retrial. *Id*. Although defendant argues that Johnson testified that he was unfamiliar with weapons, and that evidence depicting Johnson posing with firearms could have impeached his credibility, Johnson actually testified that he did not get a good look at the firearm defendant was holding

---

[4] This Court is not bound to follow a rule of law announced by this Court before November 1, 1990, but gives such decisions greater precedential effect than unpublished decisions. *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019). And this Court has, in more recent unpublished decisions, articulated a similar standard for scrutinizing whether a defendant has properly supported a remand request based on newly discovered evidence.

during the robbery, not that he was unfamiliar with all firearms.  Further, although defendant argues that photographs of Smith posing with guns and money could have been used to impeach Smith's testimony that defendant had robbed the occupants of the car with a gun shortly before the shooting, he does not explain precisely how it would have impeached Smith's testimony or how it would have cast any doubt on the testimony of Johnson and Matthews.  *Id.*

We conclude that defendant has not provided support for his claim that newly discovered impeachment evidence requires a new trial, because defendant's motion for remand lacks an affidavit or offer of proof, because the exhibits proffered in support of defendant's motion do not establish that the evidence could not have been discovered before defendant's trial, and because defendant has not shown a probability that this evidence would produce a different result on retrial. Accordingly, we decline to remand for an evidentiary hearing and to allow defendant to file a motion for a new trial on the basis of newly discovered evidence.

Affirmed.


/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Mark T. Boonstra