*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LOZANO, Minors.

UNPUBLISHED
December 15, 2022

No. 359018
St. Clair Circuit Court
Family Division
LC No. 20-000057-NA

*In re* COLLINS/LOZANO, Minors.

No. 359019[1]
St. Clair Circuit Court
Family Division
LC No. 20-000057-NA

Before: JANSEN, P.J., and O'BRIEN and HOOD, JJ.

PER CURIAM.

In Docket No. 359018, respondent father appeals as of right the order terminating his parental rights to HL and LL under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (g) (parent failed to provide proper care or custody for the child), and (j) (reasonable likelihood of harm to the child if returned to the parent). In Docket No. 359019, respondent mother appeals as of right the order terminating her parental rights to EC, HL, and LL, under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm with regard to respondent father. For respondent mother, we vacate the order terminating parental rights and remand for further proceedings consistent with this opinion.

---

[1] This Court consolidated the appeals in Docket Nos. 359018 and 359019. *In re Lozano*, unpublished order of the Court of Appeals, entered November 2, 2021 (Docket Nos. 359018 and 359019).

## I. BACKGROUND

This case involves the removal of three minor children following a complaint of improper supervision and physical neglect. Respondent father and respondent mother share two children together: HL and LL. Respondent mother also has another child, EC, with a different father who is not a party to this appeal.[2]

In February 2020, petitioner, the Michigan Department of Health and Human Services (MDHHS), conducted a home visit and found respondents' home "in disarray, cluttered, and safety hazards were observed." LL, an infant, was propped up on a bouncer seat with "a bottle covering his face." A representative from MDHHS also saw marijuana and marijuana paraphernalia on the dining room table in reach of the children. The MDHHS representative also saw unsecured chemicals under the kitchen sink within HL's reach. Respondent mother tested positive for tetrahydrocannabinol (THC) and amphetamines, and the petition alleged that both respondents admitted to smoking marijuana in front of the children. After an in-home wardship, MDHHS sought to remove the children from respondents' home, citing a domestic violence incident in which respondent father struck respondent mother in the head three times, and an unannounced home visit that revealed marijuana and marijuana paraphernalia within reach of the children. MDHHS also alleged that respondent mother had hit EC in the head with an electric cord.

The court exercised jurisdiction over the minor children. During the review period, respondents progressed with their respective service plans to the point that the caseworkers considered unsupervised visitations. In mid-April 2021, however, respondents were involved in another altercation during a party. Respondent father became jealous and emotional after respondent mother rode a "four wheeler" with another man, and told respondent mother they had to leave the party. Respondents got into respondent father's truck. Although respondent father disputes whether he touched respondent mother, he acknowledged at the termination hearing that he punched the steering wheel and ripped off the rear-view mirror. Then, when respondents returned home, respondent father punched a mirror and knocked over a television. Respondent father was criminally charged, but the prosecutor dismissed the case after respondent mother and another witness declined to testify at trial.

The caseworker, Courtney Rawlins, of Ennis Center, reported to the trial court that she saw respondents together at a gas station in early July 2021, despite the April 2021 incident. At the time, respondent father had a no-contact order as part of the then-pending criminal case, but respondent mother was not bound by the order. The July 2021 sighting of respondents together led MDHHS to request termination of both respondents' parental rights.

Rawlins did not testify at the termination hearing, but her supervisor, Tabitha Appledorn, testified regarding what Rawlins saw in July 2021. Appledorn also testified that respondent mother had regressed with regard to her parenting skills and the condition of her home after the April 2021

---

[2] Respondent mother also has a fourth child, MP, but respondent mother released her parental rights to MP in December 2008 after petitioner, the Michigan Department of Health and Human Services, alleged physical neglect.

incident. The court terminated both respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

On appeal, both respondents argue that the trial court clearly erred by terminating their parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree with respondent father. Regarding respondent mother, we vacate and remand for clarification of the court's analysis and conclusions.

## II. STANDARDS OF REVIEW

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). This Court will reverse the trial court's findings, even if the evidence supports them, if this Court is "definitely and firmly convinced" that the trial court made a mistake. *Id*.

As with the statutory grounds for termination, this Court will review whether termination is in the children's best interests for clear error. *White*, 303 Mich App at 713. Once the trial court has concluded that the petitioner has established a statutory ground for termination by clear and convincing evidence, the court then determines, by a preponderance of the evidence, whether termination is in the best interests of the minor children. *Id*.

## III. HEARSAY

As an initial matter, we address whether Appledorn's testimony recounting Rawlins's observations of respondents together at a gas station in early July 2021, a few months after the April 2021 incident, constituted inadmissible hearsay. We conclude that the trial court appropriately allowed the hearsay testimony under MCR 3.988(C)(1).

With limited exceptions, hearsay evidence may be admitted at a dispositional hearing when it is based on the same statutory grounds that led to jurisdiction. See *In re Mota*, 334 Mich App 300, 312-313; 964 NW2d 881 (2020) ("Unlike the adjudicative [trial], at the initial dispositional hearing the respondent is not entitled to a jury determination of the facts and generally, the Rules of Evidence do not apply, so all relevant and material evidence is admissible."); see also MCR 3.988(C)(1) (providing that at the dispositional hearing, all relevant and material evidence, including oral and written reports, may be received by the court and relied on to the extent of its probative value, even though such evidence may not be admissible at the violation hearing); MCR 3.977(H)(2) (providing that the Michigan Rules of Evidence do not apply at a hearing on termination of parental rights with the exception of proceedings under MCR 3.977(E) (termination at the initial disposition) or MCR 3.977(F) (termination following a supplemental petition on the basis of different circumstances); but see MCR 3.977(E)(3) (providing that termination of parental rights at the initial disposition must be based on legally admissible evidence). When DHHS seeks termination based on changed or different circumstances, i.e., different statutory grounds, hearsay is not admissible. See MCR 3.977(F); see also *In re Utrera*, 281 Mich App 1, 17-18; 761 NW2d 253 (2008).

The trial court appropriately admitted Appledorn's testimony regarding Rawlins's report. There is no dispute that the testimony was hearsay.[3] The trial court admitted the hearsay as permissible at a dispositional hearing. See MCR 3.988(C)(1). Rawlins's report focused on the same statutory grounds that gave the trial court jurisdiction: respondent father's violence toward respondent mother. Compare *Mota*, 334 Mich App at 312-313. Because Appledorn's testimony regarding Rawlins's report did not relate to new or changed bases for termination, the trial court could appropriately admit the testimony at the dispositional hearing.

## IV. DOCKET NO. 359018—RESPONDENT FATHER

## A. STATUTORY GROUNDS FOR TERMINATION

Respondent father argues the trial court clearly erred in terminating his parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). The trial court terminated respondent father's parental rights (and respondent mother's) under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

---

[3] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible unless there is a specific exception allowing its introduction. MRE 802. Appledorn's testimony about what Rawlins saw in early July 2021 constituted hearsay. It included an out-of-court statement, by Rawlins, admitted to prove the truth of the matter asserted—that she saw respondents together in early July 2021. See MRE 801 and 802. Although Rawlins was ostensibly unavailable to testify because of her pneumonia diagnosis, MRE 804(a)(4), the trial court never made a finding of unavailability as required under MRE 804(a)(4), compare *People v Duncan*, 494 Mich 713, 721-722; 835 NW2d 399 (2013), and none of the hearsay exceptions under MRE 803 or MRE 804 would have applied to her testimony. Rather, the trial court admitted the hearsay as permissible at a dispositional hearing. See MCR 3.988(C)(1).

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

A parent's failure to participate and benefit from their service plan is evidence that they will not be able to provide proper care or custody and that the child will be harmed if returned to the respondent. *White*, 303 Mich App at 711.

More than 182 days elapsed between the initial dispositional order and the termination hearing. Additionally, the conditions that led to adjudication continued to exist, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time. MDHHS became involved with respondents' case after receiving information that respondents were involved in domestic violence[4] and drug use. Respondent father's threatening and aggressive behavior was one of the reasons, if not the primary reason, the children were taken into custody. Although respondent father showed growth in other areas, such as parenting skills and drug use, his aggressive behavior did not improve.

The trial court did not clearly err in finding that clear and convincing evidence supported termination of respondent father's parental rights under MCL 712A.19b(3)(c)(*i*). Respondent father engaged in domestic violence in mid-April 2021. The incident began when respondent father and respondent mother attended a party. During the termination hearing, respondent father denied striking respondent mother. He did, however, acknowledge that he was extremely intoxicated. Respondents entered respondent father's truck together. While in his truck, respondent father punched the inside of his truck and ripped off the rearview mirror. Respondent father admitted that after they drove home, he punched a mirror and knocked over a television in respondent mother's presence. We agree with the trial court that even if respondent father did not hit respondent mother, his actions were threatening, intimidating, or assaultive. This incident still constituted an act of violence toward respondent mother. We note, however, that Officer Keri

---

[4] The conduct at issue included physical aggressiveness and threatening behavior by respondent father toward respondent mother. Although as will be noted, respondent father testified that he did not hit respondent mother, testimony from a police officer indicated that respondent mother reported that he did hit her during the April 2021 incident.

Duva, of the St. Clair County Sheriff's Office, testified at the termination hearing that respondent mother reported to her that respondent father hit respondent mother in the face more than once while they were inside his truck. This caused her nose to bleed. Considering that the April 2021 incident happened *after* respondent father received services, and considering the severity of the incident, the trial court did not clearly err when it determined that this condition of adjudication continued to exist, and there was no reasonable likelihood that the condition would be rectified within a reasonable time considering HL's and LL's young ages. Thus, the trial court did not clearly err in terminating respondent father's parental rights under MCL 712A.19b(3)(c)(*i*).[5]

## B. BEST INTERESTS

Respondent father also argues that the trial court clearly erred by concluding that termination was in the children's best interests. We disagree.

When considering whether termination is in a child's best interests, the trial court weighs a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *White*, 303 Mich App at 713 (quotation marks and citation omitted). The court also considers "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

Respondent father argues that he completed all services, stopped using marijuana, and benefited from services. As the trial court noted, there was evidence that the children were bonded to respondent father and that he exhibited good parenting skills during visits. Nevertheless, we agree with the trial court that respondent father's ongoing threatening and aggressive behavior, and severe intoxication, outweighs those facts. Respondent father failed to correct the pattern of aggressive and threatening behavior, even after over a year of treatment and services. In fact, HL had demonstrated physical aggression toward other young children, indicating that she had observed and was mimicking respondent father's behavior. Likewise, LL was also beginning to demonstrate aggressive tendencies, despite his very young age. As the court noted below, the aggressive and threatening behavior bears on respondent father's parenting ability, even if he does well during supervised visits. The trial court therefore concluded that respondent father did not benefit from services, and a preponderance of the evidence supported this conclusion. Furthermore, there was evidence that the children were doing well in their foster-care placement. Thus, the trial court did not clearly err by concluding that termination of respondent father's parental rights was in the children's best interests.

---

[5] Because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds," *Ellis*, 294 Mich App at 32, we need not address respondent father's arguments regarding subsections (g) and (j). Even so, after review, we conclude that the trial court did not clearly err in terminating respondent father's parental rights under MCL 712A.19b(3)(g) or (j).

## V.  DOCKET NO. 359019—RESPONDENT MOTHER

## A.  STATUTORY GROUNDS FOR TERMINATION

Respondent mother argues that the trial court clearly erred by finding statutory grounds to terminate her parental rights to HL, LL, and EC.  We vacate the trial court order and remand for the court to clarify how its order does not violate the holding in *In re Jackish/Stamm-Jackisch*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357001).

The primary reason MDHHS sought termination was an alleged sighting of respondents together in early July 2021 (after the April 2021 incident).  This Court has held that "it would be impermissible for a parent's parental rights to be terminated solely because he or she was a victim of domestic violence."  *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011).  If the respondent's *own behavior* is harming the children or exposing them to harm, however, then termination may be appropriate.  *Id*.  This was the case in *Plump*, where the respondent mother was exposing her children to drugs and unsuitable housing without heat.  *Id*. at 271-272.  The respondent mother had also exposed her children to a partner who had physically and sexually abused them.  *Id*. at 271-273.  She continued to associate with the abuser of both children, in violation of her probation requirements.  *Id*. at 272.

This Court recently clarified its holding in *Plump* in *In re Jackisch/Stamm-Jackisch*.  In *Jackisch*, this Court emphasized that the key question, when domestic violence is the rationale for termination, is which party is the abuser.  *Id*. at ___; slip op at 4-5.  This Court reiterated that "[t]he fact that respondent was or is a *victim* of domestic violence may not be relied upon as a basis for terminating parental rights."  *Id*. at ___; slip op at 4 (emphasis in original).

MDHHS argued, at the termination hearing, that the primary reason it sought termination for respondent mother was because Rawlins saw respondents together in early July 2021.  MDHHS argued that the fact that respondent mother continued to interact with respondent father, even after the April 2021 incident, showed that she had not benefitted from services and that there was a reasonable likelihood she would place the children in harm's way.  We first note that, under *Plump* and *Jackisch/Stamm-Jackisch*, the fact that respondent mother was a victim of domestic violence during the April 2021 incident cannot constitute grounds for termination of her parental rights.

Regardless, Rawlins's sighting of respondent mother and respondent father together in July 2021 was not a sufficient reason to terminate respondent mother's parental rights.  We note that *respondent father* was ordered not to have contact with respondent mother as a condition in the criminal case arising from the April 2021 incident.  Respondent mother had no reciprocal requirement until mid-July 2021, approximately a week after the gas-station sighting.  The April 2021 incident occurred nearly a year after the initial domestic-violence incident that led to adjudication, which involved respondent father striking respondent mother in the head three times.  It was also after both respondents successfully participated in services.  Appledorn testified that respondent mother indicated, in May 2021, that she wanted to get back together with respondent father, but that was nearly two months before the trial court ordered her to have no contact with respondent father (and four months before the termination hearing).  There was no evidence that respondent mother violated the no-contact court order after it was entered in mid-July 2021, or that she physically abused the children.  Instead, the trial court appears to have speculated that

respondent mother would remain in an abusive relationship with respondent father despite the no-contact order. "Termination of parental rights requires both a failure and an inability to provide proper care and custody, which in turn requires more than speculative opinions . . . regarding what *might* happen in the future." *In re LaFrance*, 306 Mich App 713, 732; 858 NW2d 143 (2014) (citation and quotation marks omitted). The idea that respondent mother *may* subject her children to harm in the future is speculative. See *In re Jackisch/Stamm-Jackisch*, ___ Mich App at ___; slip op at 4. On remand, the trial court must clarify the evidence on which it relies to find that respondent mother's conduct, as opposed to respondent father's, harmed the children.

Although respondent father's aggressive and threatening behavior was the primary reason MDHHS sought termination, there were other issues leading to termination including the conditions of respondent mother's home, her marijuana use, and her parenting-time behavior. On remand, the court must consider how these remaining issues affect its analysis and conclusions related to respondent mother.

We note that the caseworker varied in how she described respondent mother's progress with the treatment plan. At first, Appledorn testified that respondent mother had improved to the point that the agency, Ennis Center, was considering unsupervised visitations. As Appledorn testified, "They were in compliance with all of the case services until the domestic violence incident. We were actually going to go to unsupervised visits with the parents until that happened in April." Then, when asked if respondent mother had completed all of the recommended services, Appledorn replied, "That is absolutely correct." Specifically, respondent mother completed parenting classes, life-skills classes, psychological counseling, a substance-abuse evaluation, and drug testing, and obtained employment and housing. Yet, Appledorn also testified that respondent mother was inattentive during more recent parenting-time visits. Respondent mother took her cell phone into the bathroom during one virtual visit with the children. Appledorn testified that respondent mother had regressed with regard to the condition of her home, and the amount of clutter in the home was inappropriate. But Appledorn acknowledged that respondent mother had, at times, improved the condition of her home. Appledorn also indicated that, at the time of her testimony, she had not seen respondent mother's home in nearly three months. Finally, Appledorn testified that respondent mother, who had a valid medical-marijuana card, continued to keep open marijuana in the home, despite having access to a locked box. Respondent mother tested positive for cocaine in early 2021, but had not tested positive for any drugs other than marijuana since that time.

We also note that that the presence of open marijuana and clutter in respondent mother's home, standing alone, is likely insufficient to warrant termination of respondent mother's parental rights—particularly when there was no evidence of any resulting harm to the children. See *LaFrance*, 306 Mich App at 731 ("[D]rug use alone, in the absence of any connection to abuse or neglect, cannot justify termination solely through operation of the doctrine of anticipatory neglect."); see also *In re Richardson*, 329 Mich App 232, 247-248; 961 NW2d 499 (2019) (holding that lawful use of medical marijuana as treatment is an insufficient basis for termination of parental rights); MCL 333.26424(d) ("[A] person shall not be denied custody or visitation of a minor for acting in accordance with [the Michigan Medical Marihuana Act, MCL 333.26421 *et seq*.], unless the person's behavior is such that it creates an unreasonable danger to the minor that can be clearly articulated and substantiated."). Likewise respondent mother's inattentive behavior at more recent parenting-time visits may not warrant termination of her parental rights under any of the statutory

grounds, considering that there was evidence her parenting skills had improved overall since adjudication. On remand, the court should clarify the extent to which it relies on this behavior as support for termination.

We recognize that respondent mother had a varied compliance history with her treatment plan after the April 2021 incident. The trial court is best situated to determine whether there was sufficient evidence that the conditions that led to the adjudication continued to exist without a reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages. MCL 712A.19b(3)(c)(*i*). Although her compliance was not perfect, respondent mother demonstrated overall improvement through her service plan. The trial court should clarify what evidence supports its conclusion that that respondent mother had no reasonable expectation to provide proper care and custody within a reasonable time, despite the court's finding that she was "financially able to do so[.]" MCL 712A.19b(3)(g). MDHHS acknowledged that respondent mother had demonstrated proper care and custody until the April 2021 incident. The trial court, therefore, should also clarify what evidence supports its conclusion that there was a reasonable likelihood that the children would be harmed if returned to respondent mother. MCL 712A.19b(3)(j).

For the above reasons, we vacate the trial court order terminating parental rights related to respondent mother and remand for clarification on how its findings and conclusions are consistent with *In re Jackisch/Stamm-Jackisch*, ___ Mich App at ___; slip op at 4-6. To the extent that the court no longer considers certain evidence related to respondent mother's involvement in domestic violence as a victim of domestic violence, it should clarify the evidence on which it relies in support of its finding of statutory grounds. Because we vacate and remand for clarity on the evidence supporting the statutory grounds for termination of respondent mother's parental rights, we need not address respondent mother's arguments regarding the best-interest analysis.

## VI. CONCLUSION

In Docket No. 359018, we affirm. In Docket No. 359019, we vacate the order terminating parental rights and remand for further proceedings consistent with this opinion. On remand, the no-contact order shall remain in full effect until further order from the trial court. We retain jurisdiction.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Noah P. Hood

-9-

# Court of Appeals, State of Michigan

# ORDER

In re Collins/ Lozano Minors

Docket No. 359019

LC No. 20-000057-NA

Kathleen Jansen
Presiding Judge

Colleen A. O'Brien

Noah P. Hood
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we vacate the order terminating parental rights related to respondent mother and remand for trial court to address how the termination order is consistent with *In re Jackisch/Stamm-Jackisch,* ___ Mich App ___; ___NW2d ___ (2022) (Docket No. 357001). The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 15, 2022
Date

_____
Chief Clerk